J. C. & S. Corporation, an Illinois Corporation, and John Castrogiovanni, Anthony Castrogiovanni, Joseph Castrogiovanni, and Alfred Castrogiovanni, d/b/a Hilander Foods, Plaintiffs-Appellants, Apco Oil Corporation, an Oklahoma Corporation, Authorized To Do Business in the State of Illinois, American National Bank & Trust Co., an Illinois Corporation, Carroll Stenwall and Don Pearson, d/b/a Dog & Suds, Lowell A. Baxter and Bradley Owen Baxter, a Partnership, d/b/a Lawn & Garden Center, Earl Guth, Individually, Interpleaders, v. County of Winnebago, Illinois, and City of Rockford, a Municipal Corporation, Defendants-Appellees.

Gen. No. 68–179.

Second District.

November 18, 1969.

Cannariato, Nicolosi and Pigatti, of Rockford, for appellant.

William E. Collins, Corporation Counsel, of Rockford, Philip G. Reinhard, State's Attorney, of Rockford, and William H. Gates, Assistant State's Attorney, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The plaintiffs brought suit in the Circuit Court of Winnebago County that sought a temporary and permanent injunction to restrain the County of Winnebago and the City of Rockford from letting bids for the construction of a proposed "raised permanent median" on South Alpine Road in front of their property and for a determination by the Court "as to what would be the most feasible alternate proposal for the construction of a median strip. . . ." The plaintiff, J. C. & S. Corporation owned the property and leased it to the various Castrogiovannis named in the complaint, who operated a supermarket known as Hilander Foods. The other parties who interpleaded in the trial court were adjoining businesses and property owners but since they have not joined in this appeal we will refer to the plaintiffs hereafter only as "Hilander."

The Hilander property is located on the east side of Alpine approximately 600 feet south of the intersection of Alpine and Charles Street in the City of Rockford. Louisiana Road runs into Alpine from the west directly across from Hilander but does not extend further east. Similarly, 16th Avenue meets Alpine from the west approximately 200 feet north of Hilander but does not continue to the east. Apple Orchard Lane joins Alpine from the east about 250 feet south of Hilander but does not extend west beyond it.

Charles Street runs at a southeasterly angle from its intersection with Alpine and abuts the back end of the Hilander parcel. At the present time Hilander does have entrances and exits on both Alpine and Charles Street.

Shortly before they filed suit, the plaintiffs were advised that the County was about to commence the reconstruction of Alpine Road into a four-lane highway from Charles Street to Harrison Avenue one-half mile south of Hilander. As part of the reconstruction, an insurmountable median strip approximately 8 inches in height would separate the north and southbound lanes of traffic on

Alpine. The median strip would be cut through at 16th Avenue and Apple Orchard Lane to permit left hand turns but there would be no cut at Louisiana. As a result, it would be necessary for traffic from the west on Louisiana to turn south on Alpine and back to the north at Apple Orchard in order to have access to Hilander. Also, traffic from the north on Alpine would have to follow the same circuitous route via the Apple Orchard cut to enter Hilander. The plaintiffs complain that as a consequence of these changes they would suffer an "irreparable injury" in that potential customers would have no direct entrance to their parking lot. The plaintiffs offered to dedicate a portion of their land to permit a further expansion of Alpine in front of their property for a left-hand lane and to pay for the costs of a traffic control light at that location if it was necessary.

The evidence offered on behalf of the defendants showed that a traffic count indicated that approximately 7,200 cars a day traversed this section of Alpine Road in 1964 and that by 1984 it was estimated that 27,000 cars a day would use it. As a result of this heavy use, it was necessary to improve the highway to assure a free flow of traffic by the use of two lanes in each direction. Left-hand turns would be permitted at certain intervals but only where it was possible to provide additional or "storage" lanes for those vehicles making a turn. The storage lanes would have to be of sufficient length to prevent a backup into the other lanes that would impede the free flow of traffic.

The plans were prepared by the county highway department and submitted for approval to the State Department of Public Works and Buildings since the reconstruction was to be partially financed by State funds. The Department replied that the plans submitted were "the minimum that would be acceptable." The county superintendent of highways admitted that the only plans pre-

11

pared were those approved and that no alternate plan to provide an opening at Hilander was ever prepared.

An engineer with the Division of Highways of the Department testified that on the basis of its traffic count Alpine Road was classified as "TS–3" in the Design Manual of the Department and that under that classification a median barrier was required. All witnesses for the defense testified that their determinations were made in the interest of public safety on the highways and not as to the effects on nearby businesses.

Both parties cite the case of Ryan v. Rosenstone, 20 Ill2d 79, 169 NE2d 360, as the leading authority on this subject. In the Ryan case, the plaintiff owned a tract of land located on the northeast corner of the intersection of Illinois Highway No. 2 and Gardner Street, approximately 1,200 feet south of the Illinois-Wisconsin State line. A surmountable, "rumble" type median strip divided north and southbound traffic on Highway No. 2 from the State line about 600 feet south. From that point, the median was raised, being an insurmountable strip for another 620 feet to the intersection of Gardner. The insurmountable section of the median had been constructed to protect the traffic in the storage lane for traffic about to turn left into Gardner Street.

The plaintiff in the above case used her land as a bulk plant for the sale and distribution of oil and gasoline and she owned a fleet of seven trucks for that purpose. The plaintiff's land abutted Highway No. 2 on that portion divided by the insurmountable barrier so that it was necessary for the trucks to first proceed north on Highway No. 2 across the State line before they could execute a turn to travel south into Illinois.

█ █ The evidence disclosed that the Division of Highways had determined that approximately 16,000 cars a day traversed Highway No. 2 at this point and that about 5,000 made a turn at the intersection of Gardner Street. On the basis of those counts, the Division

concluded that an insurmountable barrier was necessary in the interest of public safety.

> The Supreme Court at page 82 stated as follows (with citations omitted):
>
> "A property owner whose land abuts upon a public street or highway has, as an incident to his ownership, the right of access. . . . This right is subject, nevertheless, to the right of the State to regulate and control the public highways for the benefit of the public even though the abutter may be inconvenienced. . . . The regulation or restriction must, however, be reasonable. . . .
>
> "The increasing number of accidents and vehicles on our highways cogently indicates the necessity of having a highway system which affords safety and permits the free flow of traffic. Such a system requires traffic control devices such as limited access highways, one-way streets, express thoroughfares, medial dividers, barrier curbs and the like. These and other traffic control devices may, on occasion, place a restriction on an abutting property owner's free and convenient access to his property, but as long as the restriction is reasonable the courts will not interfere.
>
> "No final or absolute rule can be laid down to determine reasonableness, but the circumstances of each situation must be weighed in the light of the purpose sought to be accomplished."

The court then concluded that the restrictions imposed were, under the circumstances, reasonable.

■■■ We must thus determine if under the circumstances in this case the restrictions imposed would be a reasonable exercise of the police powers to regulate traffic in the interest of public safety. It is irrefuted that

Alpine is a main, heavily-traveled thoroughfare. Although the administrative determination that an insurmountable median barrier is required is not determinative, the decisions of the Department "as to the need for certain traffic control devices is entitled to respect by the courts because of its intimate knowledge of traffic problems." Ryan v. Rosenstone, ibid., pages 82 and 83.

The superintendent testified that he determined that there should be provision for a left-hand turn from the north into Apple Orchard since there were 56 apartments on Apple Orchard with no means of access from the east. He further testified that the required storage lane for the left turn at Apple Orchard precluded an additional break at Hilander's entrance. His assistant added that it was not geometrically feasible to provide left turn lanes at 16th Avenue, Hilander and Apple Orchard.

The plaintiffs point out that the factual situation in the Ryan case is significantly different from that involved here. In Ryan, the median strip was already constructed and only inconvenienced a small fleet of oil trucks whereas here a substantial number of potential customers would be denied access to the Hilander. They further argue that in Ryan the Division of Highways had an accurate estimate of the number of left turns made daily at the intersection where here admittedly no count was taken of vehicles that turn left at Apple Orchard.

■ Nonetheless, we agree with the trial court that under the circumstances the creation of an insurmountable median barrier in front of Hilander's Alpine entrance would be a reasonable exercise of the County's power to regulate traffic in the interests of public safety. Although no actual count was taken of the number of vehicles that turn left at Apple Orchard Lane, there was sufficient evidence to support the decision to provide a break at that location. Also, no evidence was offered to refute the expert opinion of the highway engineers that

14

it would not be possible to provide required storage lanes for left turns at both the Hilander and Apple Orchard. The access to the Hilander from Charles Street remains unobstructed and while there will doubtless be some inconvenience to potential shoppers from the west the interests of public safety must prevail.

The allegations that the plaintiffs were a victim of a fraud by the County are entirely unsupported by the record. Anthony Castrogiovanni testified that prior to the construction of the supermarket two years earlier, he contacted the Department of Public Works to learn of any State plans for the improvement of Alpine Road. He was advised that Alpine would be widened but no mention was made of the median strip. He never contacted the County or City in this regard.

For the reasons given, the judgment of the trial court should be affirmed.

Judgment affirmed.

MORAN, P. J. and DAVIS, J., concur.