DEVON BANK, Plaintiff-Appellee, *v.* THE DEPARTMENT OF TRANSPORTATION, Defendant-Appellant.

First District (2nd Division)    No. 80-1104

Opinion filed April 21, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Robert Orman, Assistant Attorney General, of counsel), for appellant.

Mark S. Lieberman, David J. Letvin, and Ronald Z. Domsky, all of Chicago (Rosenthal & Schanfield, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Pursuant to a provision of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 1—101 *et seq.*), plaintiff Devon Bank (Bank), as land trustee for the Glen Oak Shopping Center in Glenview, sought circuit court *de novo* review of a decision of defendant Illinois Department of Transportation (IDOT). IDOT had required construction of an insurmountable concrete highway divider along the section of Waukegan Road which fronts Bank's trust property, thereby limiting ingress to and egress from the Glen Oak parking lot. Trial was held, and the trial court made a personal inspection of the site in the company of the parties' attorneys. The court ruled that the barrier was unreasonable, but could remain in place with the exception of its northernmost 15 feet, which blocked full access to the north driveway of Bank's property. This last section was ordered converted to a mountable median barrier. From this ruling, IDOT appeals.

IDOT requests this court to consider whether (1) the circuit court's order is void for want of subject matter jurisdiction; (2) Bank has failed to meet its burden of proof so as to justify any relief; and (3) the trial court's personal inspection of the site constitutes reversible error.

Bank is the land trustee for a shopping center development known as Glen Oak, located on the northeast parcel of land at the intersection of Waukegan Road and Lake Avenue in Glenview. Waukegan Road runs in a north-south direction. Glen Oak has two driveways providing access to that traffic artery. Lake Avenue runs in an east-west direction, and Glen Oak also has two driveways onto that road. Contiguous to the Glen Oak property along its northern boundary is a Jewel Food store and parking lot. Prior to the road construction activities giving rise to this action, the Jewel lot contained three driveways onto Waukegan Road. The southernmost Jewel driveway was located only 40 feet north of Glen Oak's northern driveway. The Jewel parking lot was graded about two feet higher than the Glen Oak lot. The two properties were connected by a paved driveway about 28 feet wide which rose up the 2-foot incline between the gradings. (The following diagram has been provided for illustrative purposes.)

not drawn to scale

▥ —insurmountable median
☐ —mountable median

Prior to the construction activities, both of Glen Oak's driveways had been "full access" onto Waukegan Road. (That is, traffic was permitted to ingress from and egress to both the north and southbound lanes.) Jewel's southernmost driveway was of limited access: traffic could enter from and exit to only the northbound lanes (right-in, right-out). Jewel's other two driveways were full access.

On the west side of Waukegan Road, developers planned and began construction of a new shopping center, Carillon Square (Carillon). Carillon petitioned IDOT for permission to construct two driveways for access to Waukegan Road. IDOT rejected the request and instead granted Carillon permission to build a single, full access driveway directly opposite Jewel's southernmost driveway. As a condition for this permit, IDOT required Carillon to construct an insurmountable median barrier

on Waukegan Road. The location of the median reduced Glen Oak's north driveway from a full access to a right-in, right-out entrance, converted the southernmost Jewel driveway to a full access entry, and eliminated Jewel's middle driveway. The barrier was extended nearly to Lake Avenue on the south (although not so planned originally), thereby converting Glen Oak's previously full access south driveway to a right-in, right-out entrance.

Bank did not receive notice of the road project, and first learned of it when construction began on November 16, 1979. On November 20, 1979, Bank filed this action for declaratory judgment and injunctive relief.

Bank called three witnesses in support of its claim. James Graziano was called as an adverse party under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 60.) Graziano is employed by IDOT as the District Permit Engineer for an area which includes the site in question. He is charged with issuing permits for work done by private contractors or municipalities upon the State highway system.

In March 1978, Graziano received a permit application concerning construction of two driveways on the west side of Waukegan Road. After a subordinate's visual inspection of the site, Graziano determined that only a single driveway would be permitted. Its location would be opposite the "main driveway" of the Jewel and Glen Oak facilities on the east side of the street. (Graziano considered these developments to be "one continuous shopping center.") The most centrally located driveway on the east side, Jewel's southernmost entrance, was chosen as the "main driveway." The purpose for this action was to funnel all traffic for the shopping centers on both sides of the street to a central location in order to provide the "safest" traffic patterns. Graziano admitted that no formal traffic count or traffic access study of the location was made prior to rendering the decision; but he relied upon his personal observations as well as police department traffic accident information.

Graziano related that the original construction plans did not extend the median barrier as far south as Glen Oak's south driveway, although that location was considered to be the most dangerous in terms of the number of accidents. This was because IDOT policy is to have a developer who is paying for such roadwork (as Carillon was here) fund construction only to the extent of his property line. The Glen Oak south driveway was located beyond the south property line of Carillon.

Graziano stated that it was IDOT's belief that access to Glen Oak would not be totally blocked by the median, since southbound traffic could turn left into the Jewel lot and proceed through the driveway linking that lot with Glen Oak's. The witness did not give notice of the proposed construction to any affected property owners.

On examination by IDOT, Graziano testified that the average daily

traffic volume on Waukegan Road was 23,600 vehicles, considered to be a heavy flow rate. He related that it was preferable to choose the Jewel south driveway rather than the Glen Oak north entrance as the opposing location for the Carillon entryway because the Jewel driveway was 9 feet wider than Glen Oak's, because a drive-in bank was located just south of the Glen Oak entrance, and because the Jewel location allowed for a longer left-turn lane at Lake Avenue for traffic southbound on Waukegan Road. Finally, Graziano stated that IDOT desired to extend the barrier across the location of the Glen Oak south driveway, but did not then believe that such was possible due to economic and departmental policy reasons. (However, the barrier was finally constructed to and past this location.)

Bank next called Steven Pudlowski, Director of Development and Public Services for the Village of Glenview, under section 60. The witness stated that he was responsible for management of the village's public works system. He related that Glenview had commissioned a traffic access report for the subject area in May 1978. The village was in part concerned with the high accident rate at the south Glen Oak driveway. That report was entered into evidence. On examination by IDOT, Pudlowski testified that the finally authorized location of the Carillon driveway was nearly identical with that recommended in the traffic study.

Bank's final witness was Dean Adanamis, one of the beneficial interest holders of the Glen Oak land trust. He stated that none of the beneficiaries received notice of the planned construction on Waukegan Road. The witness related that the Glen Oak shopping center was completed in 1967. At that time, a mountable corrugated median strip was constructed on Waukegan Road by the shopping center at the State's request.

Adanamis testified that sometime in May 1974, he had discussions with a Jewel representative concerning the construction of a driveway between the properties in order to facilitate the potential routing of emergency vehicles. Nothing came of the meeting, but one day the witness found that Jewel had had such a driveway built. Adanamis acquiesced in this construction. He never entered into an agreement with Jewel over use of the driveway, although it was located on his property.

On cross-examination, Adanamis stated that he believed the driveway served as a "convenience to a few people."

At the close of Adanamis' testimony, Bank rested its case. IDOT called Pudlowski back to the stand. Relevantly, on cross-examination, he stated that the effect of the median was to channel traffic into Glen Oak by way of the Jewel cross-over or by means of the entrances on Lake Avenue.

The testimony of Joseph Zgonina, an expert in traffic safety and engineering called by IDOT, is pertinent. He related that from a safety point of view, the best location of the Carillon driveway would be its present location. This opinion was based on a field investigation of the site. Zgonina also stated that the insurmountable median barrier, as presently constructed, was the best possible method of safely and effectively accommodating projected traffic movements. Leaving an opening in the median at Glen Oak south driveway would be detrimental from a safety point of view, posing a serious traffic conflict point. The most acceptable design to give full access to the facilities on the east side of Waukegan Road would be the joint use of the Jewel south driveway by Jewel and Glen Oak.

On cross-examination, Zgonina stated that from a safety standpoint, it was necessary to build a raised median once the Carillon driveway was constructed directly west of the Jewel driveway. That location was required in light of the factors which enter into such a decision: accommodation of through traffic movement and provision for safe and efficient access to street frontage property. Finally, the witness stated that it was not within safety considerations to give Glen Oak a full access driveway to Waukegan Road by removing that portion of the median which presently blocks its north driveway from full access.

After the close of presentation of the witnesses, the trial court made a personal observation of the site. After argument of the parties, the court found that it was "manifestly unfair to permit the Jewel Shopping Center a north and south entrance southbound and to prohibit the Glen Oak Shopping Center from a north and south exit southbound. The court in the presence of all of these gentlemen did, in fact, witness at least one car in the short period of time it observed the present intersection * * * cut diagonally to enter the Glen Oak Shopping Center." The court found the median to be unreasonable to the extent that its northernmost 15 feet blocked full access to the Glen Oak north driveway. It therefore ordered this section of the median to be converted to a mountable median.

I

IDOT asserts that the trial court was divested of subject matter jurisdiction upon Bank's alleged failure to establish a *prima facie* case that it was adversely affected by IDOT's actions, thus taking the case outside the scope of the jurisdictional statute under which the action was brought.

Under legislation passed in response to article XIII, section 4 of the 1970 Illinois Constitution (Ill. Const. 1970, art. XIII, §4), sovereign immunity remains a viable facet of Illinois law. (See *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 123, 384 N.E.2d 310.) That legislative provision states that suits against the State may be brought only in the

Court of Claims. (Ill. Rev. Stat. 1979, ch. 127, par. 801, referring to Ill. Rev. Stat. 1979, ch. 37, par. 439.1 *et seq.*) Clearly, however, other specific laws passed by the General Assembly may provide limited additional instances in which the State may be made a party to a lawsuit. See *e.g.*, Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*; *Johnson v. Department of Public Aid* (1972), 3 Ill. App. 3d 1045, 1046, 279 N.E.2d 791.

Section 4—211 of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 4—211) states, in relevant part:

> "Any person adversely affected by any rule, regulation, specification or decision of the Department issued pursuant to Sections 4—209, 4—210 or 4—211 * * * shall be entitled to judicial review or appeal under any statutory, equitable or common law, made of review or appeal. The action for review or appeal may be commenced in and the issues shall be tried de novo by the circuit court of the county in which the subject matter is located."

The legislature has thus clearly consented to waiver of sovereign immunity in circumstances falling within the scope of section 4—211.

■■ IDOT reads that provision very narrowly, viewing the circuit court's jurisdiction to consider a case thereunder as existing only so long as a plaintiff potentially can make or otherwise has made a *prima facie* case that he has been "adversely affected" by an action of IDOT. Here, Bank alleged that the construction of the safety divider would cause the loss of customers, business goodwill, and income. IDOT asserts that Bank's case-in-chief failed to prove this allegation. Accordingly, IDOT argues, section 4—211 then became inapplicable, the circuit court was divested of jurisdiction, and IDOT was once again sheltered by sovereign immunity.[1]

We reject this contention. Nothing in the statute under scrutiny suggests that the legislature intended that jurisdiction of the court maintain only so long as a possibility remained that the plaintiff could actually succeed on the merits of his case. Even assuming for argument's sake that IDOT's representation of the status of Bank's evidence is correct, the interpretation of the statute proffered by the agency is unreasonable. Instead, we believe that the sole sensible reading of the provision is one requiring only that a plaintiff *allege* sufficient facts which, if thereafter proved, would entitle him to relief. In the event that the actual evidence submitted does fail to prove this entitlement, the court would simply enter judgment for IDOT. In this analysis, the court maintains jurisdiction to bring the case to a "clean" conclusion, rather than having the likely confusion arising from the possibility of the sudden divestiture of the court's jurisdiction.

---

[1] Unfortunately, Bank has completely ignored this issue in its appellee's brief.

Thus, regardless of the strength of Bank's evidence here, the circuit court maintained subject matter jurisdiction to bring the action to conclusion, since Bank made the requisite allegation of an adverse effect from an IDOT decision.[2]

## II

IDOT contends that Bank has failed to prove sufficient facts to entitle it to relief.

■■ Section 4—210 of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 4—210) serves as the substantive basis for Bank's position in this case. That provision states, in relevant part:

"[E]very owner or occupant of property abutting upon any State highway shall have reasonable means of ingress from and egress to the State highway consistent with the use being made of such property and not inconsistent with public safety or with the proper construction and maintenance of the State highway for purposes of travel, drainage and other appropriate public use."

This language delineates the competing interests involved in these fact situations: the property owner's need for access, and the State's interest in promoting safety and efficient road use. The supreme court has previously recognized the tension existing between these interests. In *Ryan v. Rosenstone* (1960), 20 Ill. 2d 79, 82-83, 169 N.E.2d 360, the court held that once the State has made a decision to limit a property owner's access to a State highway, that decision will not be disturbed so long as the restriction is reasonable. A determination of reasonableness must be made in each case by weighing the particular circumstances in light of the aim of the restriction. The State's determination is entitled to respect due to its intimate knowledge of traffic problems. See *e.g., J. C. & S. Corp. v. County of Winnebago* (1969), 117 Ill. App. 2d 8, 12-15, 252 N.E.2d 761.

■■ Thus, it was incumbent upon Bank to demonstrate that the decision of IDOT to build the median barrier here was unreasonable. In attempting to meet this burden, Bank presented no traffic experts to testify that any other design would result in nearly equal benefits to public safety and smooth traffic flow, or that this design impeded the attainment of those goals. To the contrary, the sole witness providing any positive input to Bank's case was the beneficial interest holder in Glen Oak. Yet, he merely related that the shopping center had previously enjoyed two full access driveways. No other evidence presented by Bank tended to show that

---

[2] IDOT argues that Bank cannot proceed with the action solely on the basis of section 4—210. This claim is technically correct, as the court is granted no subject matter jurisdiction therein. However, section 4—211 clearly grants the circuit court jurisdiction to review IDOT decisions which were issued pursuant to section 4—210. Thus, this part of IDOT's argument is irrelevant to resolution of the appeal.

IDOT's decision was unrelated to safety or traffic concerns.[3] Bank argues in its brief that IDOT failed to conduct significant analysis of the traffic patterns of the site, thus rendering the IDOT decision a "departmental fiat." Examination of the record demonstrates that an expert in the field, witness Zgonina, considered the IDOT plan to be *best* suited to further both safety and usage interests on Waukegan Road. Nothing in Bank's case contradicted the witness.

It may be true that the resulting limitation of Glen Oak's access to Waukegan Road is in a sense "unfair" when viewed in light of the access granted to Jewel and Carillon. This is essentially the foundation for the trial court's ruling that the barrier is unreasonable. However, as stated by the supreme court, "[t]he increasing number of accidents and vehicles on our highways cogently indicates the necessity of having a highway system which affords safety and permits the free flow of traffic. Such a system requires traffic control devices such as * * * medial dividers * * *. [These] may, on occasion, place a restriction on an abutting property owner's free and convenient access to his property, but as long as the restriction is reasonable the courts will not interfere." (*Ryan v. Rosenstone* (1960), 20 Ill. 2d 79, 82.) Bank has demonstrated only that its property has unfortunately lost some direct access to Waukegan Road, so that the State may further the interests of public safety. However, the record established that southbound traffic from Waukegan Road does have indirect access to Bank property through the traffic pattern established by IDOT. And, of course, northbound traffic also has access to Bank's property. Therefore, we believe the trial court erred in finding the median design used here by IDOT to be unreasonable.

### III

IDOT asserts that the trial court erred in relying upon its personal observations of the site in ordering removal of part of the median barrier. ■■ As a general proposition, it is established that facts gained from viewing property at issue cannot be considered in evidence. This rule is strictly applied in a bench trial. (*Lancer Industries, Inc. v. City of Aurora* (1975), 30 Ill. App. 3d 962, 963, 333 N.E.2d 653.) The only legitimate purpose of such an inspection is to enable the court to understand the issues and to apply that evidence which is properly admitted.

■■ Here, the trial court stated that it planned to view the location in the company of the parties' attorneys, because an aerial photo of the site had

---

[3] Bank urges in its brief that the barrier will cause loss of income and impede safety vehicle access. There is no evidence of record to support either allegation.

not been provided and the court needed perspective. The parties did not object to this action. However, in rendering its decision, the court ruled that the northern 15 feet of the barrier should be removed in order "to avoid what the court observed when it was at the site of cars crossing diagonally into [the Glen Oak north entrance from Waukegan Road southbound lanes]."

■■ The court should not have relied upon such information in ruling on the merits of this case. Certainly, an aerial photo would not have shown such an action. In considering what it had seen as evidence, rather than in merely developing a perspective, the court exceeded the scope of its stated purpose of the examination, which purpose the parties acceded to. (Based upon the parties' approval, we find no problem in the examination had the court stayed with this original purpose.) This result thus violated the *Lancer* rule. Further, in ordering the removal of the portion of the barrier which blocked Glen Oak's north entry, the court ignored expert *testimony that such action would create a traffic conflict point and lessen* the safety of the roadway. We must therefore reverse that portion of the circuit court's order mandating removal of the northern 15 feet of the barrier.[4]

For these reasons, we reverse the entirety of the trial court's decision. We find IDOT's determination to be in compliance with the law and to be reasonable under the circumstances. The barrier shall remain intact as constructed.

Reversed.

STAMOS and PERLIN, JJ., concur.

---

[4] In its brief, Bank places great emphasis upon the trial court's viewing of a car making an illegal turn in arguing that the barrier was dangerous. Clearly, since the trial court improperly brought this fact into evidence, it can have no bearing on this court's review of the reasonablenss of the construction.