(No. 76503.

# NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION, INC., *et al.*, Appellants, v. THE COUNTY OF DU PAGE *et al.*, Appellees.

*Opinion filed March 23, 1995.*

26

McKenna, Storer, Rowe, White & Farrug, of Wheaton (John C. Bartler, of counsel), for appellants.

James E. Ryan, State's Attorney, and Barbara A. Preiner, George J. Sotos and Anna B. Harkins, Assistant State's Attorneys, of Wheaton, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

In this case of first impression in Illinois, plaintiffs, Northern Illinois Home Builders Association, Inc., *et al.*,

challenge the constitutionality of two State enabling statutes and three Du Page County ordinances adopted pursuant thereto which impose transportation impact fees on new development. Plaintiffs filed a complaint for *mandamus* in the circuit court of Du Page County which in effect sought a declaratory judgment that the legislation and ordinances are unconstitutional. Following a bench trial, the circuit court denied plaintiffs' complaint and they appealed. The appellate court, while holding that both enabling acts are constitutional, found a provision of one ordinance to be violative of due process but severable from the remainder of the ordinance (251 Ill. App. 3d 494). We granted plaintiffs' petition for leave to appeal (145 Ill. 2d R. 315).

In this court, plaintiffs contend that the enabling legislation and/or Du Page County ordinances are unconstitutional because they: (1) violate the takings clauses of the United States and Illinois Constitutions; (2) constitute special legislation; (3) impose taxes on real property in violation of the Illinois Constitution; (4) violate the uniformity clause of the Illinois Constitution; and (5) violate the right to travel. Plaintiffs also argue that the appellate court erred in holding that the Du Page County ordinances comply with the requirements of the second enabling act, that the unconstitutional forfeiture provision of the current ordinance is severable from the rest of the ordinance and that the appeals provisions do not violate procedural due process. Finally, plaintiff Joe Keim Builders, Inc., contends it is entitled to a refund for certain impact fees previously paid.

The first transportation impact fee enabling statute passed by the Illinois legislature was former section 5—608(a) of the Illinois Highway Code, which became effective January 1, 1988. That act provided:

"The county board of any county of over 400,000 population but less than 1,000,000 population may estab-

lish transportation impact districts and may collect transportation impact fees from persons constructing new developments in those districts, if such developments require direct or indirect access to the county highway system or State highway system. The fees shall be in addition to any amounts otherwise required to be paid by the developer and shall be collected at the time a building permit is issued or at such other time that the county board directs. The county board shall establish by ordinance or rule the amount of such fees, which shall be based on the amount of estimated traffic generated by various land uses and the amount of improvements needed to maintain a reasonable level of service on the existing and proposed highway systems in light of expected traffic growth." (Ill. Rev. Stat. 1987, ch. 121, par. 5—608(a), repealed by Pub. Act 86—97, § 2, eff. July 26, 1989.)

Under the first enabling act, all fees collected were to be retained in a special fund established for each district and used in the same manner as motor fuel tax monies, except that all expenditures were to be made for improvements within or immediately adjacent to the district from which the monies were collected. Ill. Rev. Stat. 1987, ch. 121, par. 5—608(b), repealed by Pub. Act 86—97, § 2, eff. July 26, 1989.

Pursuant to the first enabling act, Du Page County passed ordinance ODT—016—88 on or about November 22, 1988. The stated purpose of this ordinance was "to ensure that new development *** pays a fair share of the costs of transportation improvements needed to serve new development." (Du Page County Ordinance ODT—016—88, § 2(3).) The ordinance divided the county into 11 districts, and set forth a formula for the calculation of fees to be paid, taking into consideration the cost of road construction and providing credits for taxes and developer-financed improvements. The ordinance contained fee tables for residential, commercial and other types of land use in each district. On June 27, 1989, Du Page County passed an amended ordinance, ODT—

021—89, which made certain textual changes and corrected computational errors made in the first ordinance, providing a new set of impact fee tables. The third Du Page County ordinance, ODT—021A—89, passed on July 25, 1989, changed the fee tables to reflect increases in the gas tax.

On July 26, 1989, the legislature repealed the first enabling act and passed the Road Improvement Impact Fee Law (605 ILCS 5/5—901 *et seq.* (West 1992)), which provided a comprehensive scheme for the enactment of impact fee ordinances in counties with a population of over 400,000 and all home rule municipalities. This second enabling act included the requirement that "[a]n impact fee payable by a developer shall not exceed a proportionate share of costs incurred by a unit of local government which are specifically and uniquely attributable to the new development paying the fee ***." (605 ILCS 5/5—904 (West 1992).) Du Page County subsequently passed ODT—021B—89, effective January 1, 1990, which amended the fee schedules to reflect changes in the motor fuel and property tax credits. The county's current impact fee ordinance, ODT—021C—89, became effective July 25, 1990. This ordinance provided new fee tables which reflected the elimination of charges to developers for their impact on State roads. This change resulted in three "zero impact fee districts" where no impact fees are due because there are fewer miles of county road in those districts and the credits exceed the fees that would be owed.

We first examine plaintiffs' claim that the enabling acts and ordinances violate the takings clauses of the fifth amendment of the United States Constitution and section 2 of article I of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2). "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens

which, in all fairness and justice, should be borne by the public as a whole.' " (*Dolan v. City of Tigard* (1994), 512 U.S. 374, 384, 129 L. Ed. 2d 304, 315-16, 114 S. Ct. 2309, 2316, quoting *Armstrong v. United States* (1960), 364 U.S. 40, 49, 4 L. Ed. 2d 1554, 1561, 80 S. Ct. 1563, 1569.) However, a land use regulation does not effect a taking if it substantially advances legitimate State interests and does not deny an owner economically viable use of his land. (*Dolan*, 512 U.S. at 385, 129 L. Ed. 2d at 316, 114 S. Ct. at 2316; *Agins v. Tiburon* (1980), 447 U.S. 255, 260, 65 L. Ed. 2d 106, 112, 100 S. Ct. 2138, 2141.) In *Nollan v. California Coastal Comm'n* (1987), 483 U.S. 825, 97 L. Ed. 2d 677, 107 S. Ct. 3141, and recently in *Dolan*, the United States Supreme Court discussed the standards for determining what constitutes a "legitimate state interest" and the type of connection which would satisfy the requirement that the regulation "substantially advance" the State interest.

> "In evaluating petitioner's [taking] claim, we must first determine whether the 'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the city. *Nollan*, 483 U.S., at 837. If we find that a nexus exists, we must then decide the required degree of connection between the exactions and the projected impact of the proposed development." *Dolan*, 512 U.S. at 386, 129 L. Ed. 2d at 317, 114 S. Ct. at 2317.

In the instant case, it is clear that the need to minimize or reduce traffic congestion is a legitimate State interest (*Dolan*, 512 U.S. at 388, 129 L. Ed. 2d at 318, 114 S. Ct. at 2317-18; see also *Devon Bank v. Department of Transportation* (1981), 95 Ill. App. 3d 690, 697 (State has interest in promoting safety and efficient road use)), and it is equally clear that a nexus exists between preventing further traffic congestion and providing for road improvements to ease that congestion. However, the second part of the analysis, whether the degree of the exactions demanded bears the required relationship

to the projected impact of the new development, is not as easily determined. As the Supreme Court noted in *Dolan*:

> "In some States, very generalized statements as to the necessary connection between the required dedication and the proposed development seem to suffice. See, *e.g.*, *Billings Properties, Inc. v. Yellowstone County*, 144 Mont. 25, 394 P.2d 182 (1964); *Jenad, Inc. v. Scarsdale*, 18 N.Y.2d 78, 218 N.E.2d 673 (1966). \*\*\*
>
> Other state courts require a very exacting correspondence, described as the 'specifi[c] and uniquely attributable' test. The Supreme Court of Illinois first developed this test in *Pioneer Trust & Savings Bank v. Mount Prospect*, 22 Ill. 2d 375, 380, 176 N.E.2d 799, 802 (1961). Under this standard, if the local government cannot demonstrate that its exaction is directly proportional to the specifically created need, the exaction becomes 'a veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations.' *Id.*, at 381, 176 N.E.2d, at 802." *Dolan*, 512 U.S. at 389-90, 129 L. Ed. 2d at 319, 114 S. Ct. at 2318-19.

The appellate court correctly found, and the parties agree, that *Pioneer Trust* sets forth the standard applicable in this case. Thus, "in order for the impact fees to pass constitutional muster the need for road improvement impact fees must be 'specifically and uniquely attributable' to the new development paying the fee." (251 Ill. App. 3d at 501, quoting *Pioneer Trust & Savings Bank v. Village of Mount Prospect* (1961), 22 Ill. 2d 375, 380.) However, our examination reveals that only the second of the two enabling acts complies with the stringent requirements of Illinois' *Pioneer Trust* test. As previously noted, the second enabling act mandates that the road improvements for which impact fees are imposed must be "specifically and uniquely attributable to the traffic demands generated by the new development paying the fee." (605 ILCS 5/5—906(a)(1) (West 1992).) The second enabling act further provides, in its definitional section:

" 'Specifically and uniquely attributable' means that a new development creates the need, or an identifiable portion of the need, for additional capacity to be provided by a road improvement. Each new development paying impact fees used to fund a road improvement must receive a direct and material benefit from the road improvement constructed with the impact fees paid. The need for road improvements funded by impact fees shall be based upon generally accepted traffic engineering practices as assignable to the new development paying the fees." (605 ILCS 5/5—903 (West 1992).)

We believe that this language comports with the dictates of *Pioneer Trust,* wherein this court indicated that an exaction which required a developer to provide for improvements " 'which are required by [his] activity,' " would be permissible, but one which required him to provide for improvements made necessary by " 'the total activity of the community,' " would be forbidden. *Pioneer Trust,* 22 Ill. 2d at 380, quoting *Rosen v. Village of Downers Grove* (1960), 19 Ill. 2d 448, 453.

On the other hand, it appears clear that the first enabling act was not written with the specifically and uniquely attributable test in mind, where no such language is contained anywhere in its three-paragraph text. Indeed, the first act directs that the fees paid by new developments be used to fund *all* road improvements "needed to maintain a reasonable level of service," with the single proviso that "all expenditures must be made for improvements within, or in areas immediately adjacent to, the transportation impact district from which the expended monies were collected." (Ill. Rev. Stat. 1987, ch. 121, pars. 5—608(a), (b).) We agree with the appellate court that, in order for Du Page County to comply with the "specifically and uniquely attributable" test, "it can only impose impact fees for the road improvements made necessary by the additional traffic generated by *new* development \*\*\* [and] the new development paying the impact fee must receive a *direct*

and *material* benefit from the improvement financed by the impact fee." (Emphasis in original.) (251 Ill. App. 3d at 502.) However, it is only Du Page County's current impact fee scheme, developed in accordance with the second enabling act, which complies with both of these requirements.

There is nothing in the first enabling act, or the ordinances based upon it, which restricts the expenditure of funds collected thereunder to deficiencies created by the new development providing those funds. Additionally, the fact that funds could be used for areas outside the transportation impact district prevents the new development from receiving the direct and material benefit of the road improvements financed by its fees. Although we agree with the appellate court that there is no requirement that the improvements financed by impact fees must be used exclusively or overwhelmingly by the development paying the fee (251 Ill. App. 3d at 503), the funds collected from new development in a particular district must be used to finance improvements in that same district.[1] We are satisfied that a carefully drawn district system, such as that adopted by Du Page County, can successfully limit a geographic area so that fee payers receive a direct and material benefit.

In sum, we hold that the first enabling act is constitutionally flawed because of its failure to meet the "specifically and uniquely attributable" test set forth in *Pioneer Trust*. Consequently, the Du Page County ordinances passed pursuant to the first enabling act are invalid and the monies collected thereunder should be

---

[1]Evidence at trial established that fee payers in a district do benefit from the decrease in congestion resulting from the improvements made in that district, because the districts were drawn to reflect transportation and development corridors and municipal boundaries and to link improvements to the area in which travel from new development is expected.

returned. (See *Mills v. Peoples Gas Light & Coke Co.* (1927), 327 Ill. 508, 535 (an unconstitutional act confers no rights, affords no protection, imposes no duties, and is, in legal contemplation, as inoperative as though it had never been passed).) However, we believe the second enabling act has rectified the constitutional deficiencies of the first act. Therefore, fees imposed on new development under an ordinance which conforms to the requirements of the second enabling act are not a confiscation of private property in violation of the takings clauses of our State and Federal Constitutions, but are instead a "reasonable regulation under the police power." *Pioneer Trust*, 22 Ill. 2d at 380.

We next address plaintiffs' related contention that the current Du Page County ordinance, ODT—021C—89, does not comply with the second enabling act.[2] Plaintiffs claim that the second enabling act requires that individual impact fee calculations be made with respect to each proposed development within a county, and that the Du Page County ordinance does not comply because it predetermines areawide fees without considering the particular characteristics of a specific development. However, the second enabling act states that the "need for road improvements funded by impact fees shall be based upon *generally accepted traffic engineering practices* as assignable to the new development paying the fees." (Emphasis added.) (605 ILCS 5/5—903 (West 1992).) Our review shows that testimony presented at trial established that the fee calculation method used by Du Page County complies with generally accepted traffic engineering practices and that a majority of

---

[2]Because we have held the first enabling act to be unconstitutional for authorizing an impermissible taking, and the ordinances passed pursuant to it to be invalid, we find it unnecessary to consider plaintiffs' remaining challenges to this legislation.

impact fee ordinances nationwide use averages to predetermine impact fees.

Plaintiffs correctly note that under section 5—906(b) of the second enabling act, the unit of local government imposing the impact fee shall consider eight factors in determining the proportionate share of the cost of road improvements to be paid by the developer, including "[t]he extent to which the new development should be credited for providing road improvements." (605 ILCS 5/5—906(b)(5) (West 1992).) However, this requirement is met by the current Du Page County ordinance, which provides mechanisms by which a developer may obtain credits against his fees for his individual contributions to the cost of road improvements. (See Du Page County Ordinance ODT—021C—89, § 9(1) ("the Fee Payer may enter into a Fair Share Fee Agreement with the County providing for *** reduction of the fee through transportation systems management strategies, recapture payments for construction credits, credit and security arrangements and other matters relating to the fee"); see also § 13(1) ("[a]ny person who initiates development may apply for an improvement credit against the fair share impact fee imposed by this Ordinance for any contribution, payment, recapture, construction, or dedication of land accepted and received by Du Page County for system improvements in accordance with the provisions of this Section").) Thus, Du Page County's use of a fee formula coupled with credits against the fee for individual developers complies with the requirements of the second enabling act.

We next address plaintiffs' argument that the second enabling act violates the constitutional prohibition against special legislation. Article IV, section 13, of the Illinois Constitution of 1970 provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general

law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, § 13.) The special legislation provision was designed to prevent arbitrary legislative classifications. *Cutinello v. Whitley* (1994), 161 Ill. 2d 409, 417; *In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 379.

In *Cutinello*, this court recently considered a special legislation challenge to the County Motor Fuel Tax Law (Ill. Rev. Stat. 1991, ch. 34, par. 5—1035.1), which allows the counties of Du Page, Kane, and McHenry to impose gasoline taxes to fund improvements in highways and waterways. Here, as in *Cutinello*, where the statute challenged as special legislation does not affect a fundamental right or involve a suspect or quasi-suspect classification, the appropriate standard of review is the rational basis test. (*Cutinello*, 161 Ill. 2d at 417.) Under this standard, the court must determine whether the classification at issue has a reasonable basis, *i.e.*, whether it is based upon a rational difference in the persons or objects classified, and whether the classification is rationally related to a legitimate State interest. (*Cutinello*, 161 Ill. 2d at 417; *In re Belmont Fire Protection District*, 111 Ill. 2d at 380.)

"When evaluating a classification, a reviewing court considers the broad discretion of the legislature to create statutory classifications for the general welfare. [(*Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 236.)] Thus, classifications made by the legislature are presumed valid, and any reasonable doubts must be resolved in favor of upholding them. (*Bilyk*, 125 Ill. 2d at 235.) Further, a statute will be upheld 'if any set of facts can be reasonably conceived which justify distinguishing the class to which the law applies from the class to which the statute is inapplicable.' (*Bilyk*, 125 Ill. 2d at 236.) Our review in this regard is therefore deferential, and plaintiffs have the burden of establishing the unreasonableness of the legislative action. [*DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, 67.]" *Cutinello*, 161 Ill. 2d at 417-18.

The second enabling act allows all home rule municipalities, as well as counties with populations over 400,000, to implement impact fees. Although population or territorial differences constitute a reasonable basis for addressing transportation and traffic problems *(Cutinello,* 161 Ill. 2d at 419), plaintiffs argue that the second enabling act is invalid because the need to alleviate congestion due to expansion also exists in more and less populated units of local government. In particular, plaintiffs argue that it is illogical that a town with a population less than 100, the home rule Village of Muddy, in Saline County, is given the power to impose transportation impact fees while counties the size of Will and Kane, with populations in excess of 300,000, are excluded. However, plaintiffs' argument mixes apples with oranges. It is clear that two separate bases exist for the classifications made by the second enabling act. The true question is whether each class meets the rational basis test.

First, we agree with the appellate court that because evidence of record shows that counties with populations greater than 400,000 suffer significantly worse traffic congestion than counties with fewer than 400,000 persons, there is a rational difference of condition upon which the population classification rests. (See 251 Ill. App. 3d at 508 (counties with more than 400,000 people had the highest numbers of persons per mile of road, the most road miles per square mile, the highest average daily vehicle miles per road mile, the highest average daily vehicle miles per square mile, and the highest population density per square mile).) It is true that expert testimony at trial also revealed that other large counties suffer problems of urbanization in places and that there are benefits to giving all counties the power to implement impact fees. However, while transportation problems may exist to a lesser degree in other parts

of the State, " 'the legislature is not bound to pass one law meeting every exigency, but may consider degrees of evil.' " (*Cutinello*, 161 Ill. 2d at 422, quoting *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 579.) Thus, we believe the legislature could rationally conclude that a greater need for impact fees existed in counties with populations over 400,000.

Second, the legislature's inclusion of home rule units in the current statute is not, as plaintiffs suggest, an arbitrary statutory declaration in order that the class may be the recipient of special and exclusive legislative favors. Indeed, home rule units had the power under section 6 of article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6) to implement impact fees *prior* to the passage of the second enabling act. Rather, instead of creating special powers for home rule units which they did not already possess, the second enabling act curtailed that power by setting forth "minimum standards and procedures" for the imposition of impact fees, "so that the burden of paying for road improvements can be allocated in a fair and equitable manner." (605 ILCS 5/5—902 (West 1992).) Therefore, we agree with the appellate court that the second enabling act is not made special or local by merely incorporating home rule units within its scope (251 Ill. App. 3d at 509), because a rational basis exists for the inclusion of this class.

Plaintiffs also contend that the impact fee classifications of the second enabling act cannot be reasonable because another statute, the County Motor Fuel Tax Law, used a different classification to impose a tax to fund transportation needs. However, the validity of one statutory classification is not properly tested by reference to another. This court need only determine whether a rational basis exists for the legislative action, not the wisdom of the classification. (*Cutinello*, 161 Ill. 2d at

422.) Further, there has been no showing by plaintiffs that the purpose of the county gas tax and impact fee statutes is the same. That the legislature has chosen different bases for its classifications in addressing different transportation needs is not evidence that either classification is unreasonable. Additionally, the nature of the revenue-raising mechanisms differs enough to support different classifications. The gas tax generates monthly revenue available to fund a variety of transportation improvements needed by the community as a whole, and is collected from all consumers in a "pay-as-you-go" system. Under the second enabling act, impact fees are designed to fund only those road improvements which will be needed by new development, and are collected from new users in a "front-loaded" system which anticipates consumption.

In *Cutinello*, we held that the legislature rationally concluded that a greater need for general transportation financing existed in Du Page, Kane and McHenry Counties than in other parts of the State. We now hold, without contradiction, that the legislative action in question here satisfies the rational basis test, where a greater need for impact fees exists in counties with populations over 400,000, and where all units of government with the power to impose impact fees should be governed by uniform standards. "To hold otherwise would make it more difficult for the General Assembly to pass legislation addressing the transportation needs of specific geographic areas of the State." *Cutinello*, 161 Ill. 2d at 422.

Plaintiffs next contend that the impact fees are an unconstitutional tax on real property. Article IX, section 4(a), of the Illinois Constitution of 1970 states: "Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide

by law." (Ill. Const. 1970, art. IX, § 4(a).) Plaintiffs argue that Du Page County's ordinance violates this constitutional provision because the impact fees imposed by it bear no relation to the value of the property taxed. However, we agree with the appellate court that impact fee ordinances impose a regulatory or service fee on new development and not a tax. (251 Ill. App. 3d at 505.) Thus, the constitutional requirement of a levy based on valuation is inapplicable.

In *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, this court examined a similar contention that a sewage service charge was, in reality, a tax that would "violate the constitutional requirement that taxes be equal and uniform." (*Smith*, 21 Ill. 2d at 582.) Noting that there is a clear cut and definite distinction between such service charges and taxes, this court in *Smith* stated:

> "Taxes are an enforced proportional contribution levied by the State by virtue of its sovereignty for support of the government. [Citations.] Service charges, tolls, water rates and the like are, on the other hand, contractual in nature, either express or implied, and are compensation for the use of another's property, or of an improvement made by another, and their amount is determined by the cost of the property or improvement and the consideration of the return which such an expenditure should yield. [Citations.] The charge is made, not by virtue of the sovereignty of the governmental unit, but in its business or proprietary capacity." (*Smith*, 21 Ill. 2d at 583.)

We still adhere to this reasoning, and here the evidence shows that transportation impact fees are compensation for an improvement made by the county, and that the fee is determined by the cost of the improvements to be made in each district. The record also shows the impact fees collected in each district constitute only a portion of the cost of road improvements made necessary by new development in that district. Therefore, the charge, as in *Smith*, is for the use of the county's property or

improvement rather than a contribution for the support of the government.

Additionally, we find to be without merit plaintiffs' contention that impact fees are real estate taxes because, under the second enabling act, any refund runs with the property owned by the fee payer. Expert testimony at trial revealed that unlike taxes, which are imposed for societal rather than individual benefits, impact fees provide a benefit in relation to the payment. This assertion is supported by evidence that the amount of travel generated by new development can be quantified using traffic engineering principles and fed into the impact fee equation. Indeed, we have already held that impact fees provide a direct and material benefit and are based on the use or need for service generated by the fee payer. Thus, because the owners of property subject to an impact fee are the beneficiaries of the service and improvements the fees provide, it is appropriate for those fees to be "refunded to the person who paid the fee or to that person's successor in interest." (605 ILCS 5/5—916 (West 1992).) The fact that those who create the need for road improvements are property owners does not turn a service fee into a property tax.

Plaintiffs alternatively contend that if impact fees are not property taxes, then they violate the uniformity clause of the Illinois Constitution, which provides that "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." (Ill. Const. 1970, art. IX, § 2.) Plaintiffs argue that impact fees violate the uniformity clause because the funds collected inure to the general public, yet certain taxpayers are excluded from the obligation of paying the fee, making the classification of fee payers unreasonable. In support of this contention, plaintiffs

cite *Crocker v. Finley* (1984), 99 Ill. 2d 444, wherein this court held that a $5 filing fee, imposed upon petitioners for dissolution of marriage to fund services for victims of domestic violence, was an unreasonable and arbitrary classification for tax purposes because it imposed the burden of funding a general welfare program on a narrow group of matrimonial litigants, while excluding other classes of taxpayers.

However, this court noted in *Crocker* that the fee was arbitrary because the individuals who would be benefited by the program, all victims of domestic violence, were not necessarily members of the class chosen to bear the cost of the program, petitioners for dissolution of marriage. (*Crocker*, 99 Ill. 2d at 456-57.) In the instant case, we have previously established that the road improvements for which impact fees are imposed must be specifically and uniquely attributable to the traffic demands generated by the fee payers, and that those fee payers must receive a direct and material benefit from the road improvements constructed, although not their exclusive use.[3] Thus, here, unlike in *Crocker*, the members of the class bearing the cost of the program are indeed its sole beneficiaries.

In *Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 468, this court stated that the uniformity clause requires that the classification of a fee or tax must be based on a real and substantial difference between those persons assessed and those who are not, and must bear some reasonable relationship to the object of the legislation or to public

---

[3]Expert testimony at trial established that each new housing unit produces a need for a determinable amount of new road lane, which will necessarily be used by the general public. However, the only benefit provided from this road construction is to new development, not to present residents of a county who would experience a decline in service in the absence of improvements which maintain current traffic levels.

policy. It is clear from the foregoing discussion that the fee involved in *Crocker* would not withstand the *Searle* test. There is, however, a real and substantial difference between new development which generates additional traffic, and existing development which does not. Further, the fees imposed on new development bear a reasonable relationship to the legislative purpose of assuring that new development supports its fair share of the cost of meeting the demand for road improvements. Thus, the classification of impact fee subjects is reasonable and does not violate the uniformity clause of our constitution.

Plaintiffs further argue that Du Page County's impact fees are not uniformly imposed because they differ among the 11 districts and because there are currently three districts where no impact fees are due. We agree with the appellate court that fee differences arising from variant road improvement costs, and credits which may, as in the three "zero-fee" districts, exceed the fee that would be due, are real and substantial differences which do not violate the uniformity clause. (251 Ill. App. 3d at 505-06.) Where we have established that the Du Page County districts are reasonably drawn and the fee formula is equally applied, a difference in mathematical results among the districts does not destroy uniformity.

Next we address plaintiffs' argument that an appeals provision of the current Du Page County ordinance violates procedural due process by making it "practically and financially impossible for a fee payor to contest the computations." It is clear that the fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner. (*Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 47 L. Ed. 2d 18, 32, 96 S. Ct. 893, 902; *People v. R.G.* (1989), 131 Ill. 2d 328, 353.) However, "[t]he concept of

due process is 'flexible and calls for such procedural protections as the particular situation demands.' " (*People v. P.H.* (1991), 145 Ill. 2d 209, 235, quoting *Mathews*, 242 U.S. at 334, 47 L. Ed. 2d at 33, 96 S. Ct. at 902.) Section 12 of ODT—021C—89 allows a developer to provide an individual assessment of the impact of the proposed development upon the transportation system in the county. Plaintiffs specifically argue that compliance with this section, which requires that an individual assessment use trip-generation data collected from local empirical surveys, would be so difficult and time-consuming as to preclude any meaningful appeals. Although plaintiffs' expert testified that the time and effort involved in contesting the fee computation would "add up to a significant cost," without a more precise estimate of the expense, this argument is purely speculative. We find that when the current Du Page County ordinance is examined as a whole, it provides sufficient mechanisms whereby a fee payer may be meaningfully heard.

Plaintiffs further argue that although the appellate court was correct in holding that the forfeiture provision of the current Du Page County ordinance violates due process, it erred in holding that the provision was severable from the remainder of the ordinance. Initially, we note our agreement with the appellate court's finding that section 11(2) of ordinance ODT—021C—89 is unconstitutional. (251 Ill. App. 3d at 511.) This provision states that "in order to encourage the use of the above fee schedule, if an applicant chooses to pay any applicable fee in accordance with such schedule, the fee which would otherwise be due and owing shall be discounted by 15%. Developers who choose to conduct an Individual Assessment *** shall forfeit the 15% discount." (Du Page County Ordinance ODT—021C—89,

§ 11(2).) It is clear that the forfeiture of the 15% discount burdens the right of a fee payer to appeal. However, we believe the constitutional deprivation involved is more properly categorized as a violation of the equal protection and uniformity clauses than of due process.

In *Lindsey v. Normet* (1972), 405 U.S. 56, 31 L. Ed. 2d 36, 92 S. Ct. 862, the Supreme Court addressed the constitutionality of an Oregon statute that required tenants challenging eviction proceedings to post a bond of twice the amount of rent expected to accrue pending appellate review. The bond was forfeited to the landlord if the lower court decision was affirmed. The Court noted that the double-bond requirement, which burdened only tenants, including tenants whose appeals were nonfrivolous, erected "a substantial barrier to appeal faced by no other civil litigant in Oregon." (*Lindsey*, 405 U.S. at 79, 31 L. Ed. 2d at 54, 92 S. Ct. at 877.) The *Lindsey* Court therefore concluded that the requirement bore "no reasonable relationship to any valid state objective" and that it discriminated against the class of tenants appealing from adverse decisions in wrongful detainer actions in an arbitrary and irrational fashion which violated the equal protection clause of the fourteenth amendment. (*Lindsey*, 405 U.S. at 76-77, 79, 31 L. Ed. 2d at 52, 54, 92 S. Ct. at 876, 877.) Here, as in *Lindsey*, the provision in question imposes a penalty that bears no reasonable relationship to any valid State objective and that arbitrarily discriminates against a narrow class, fee payers choosing to appeal the imposition of impact fees. "It is an invidious discrimination at which the Equal Protection Clause is aimed for a legislature to select one class of appellants who seek to retain possession of property and place a more onerous condition on their right to appeal than is placed on other like appellants." (*Lindsey*, 405 U.S. at 81, 31 L. Ed. 2d at 55, 92 S.

Ct. at 878 (Douglas, J., dissenting in part).) Accordingly, we hold that, under *Lindsey*, section 11(2) of ordinance ODT—021C—89 violates the equal protection clause. Additionally, because it effectively increases the fee imposed on those members of the class of impact fee payers who request individual assessments, section 11(2) also violates that portion of the uniformity clause which requires that "the subjects *** within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2.

While we find that the ordinance's forfeiture provision is unconstitutional, we need not invalidate the ordinance in its entirety. Section 25 of ODT—021C—89 contains a general severability clause, which provides: "In the event that any portion or section of this Ordinance is determined to be invalid, illegal or unconstitutional by a court of competent jurisdiction, such decision shall in no manner affect the remaining portions or sections of the Ordinance which shall remain in full force and effect." (Du Page County Ordinance ODT—021C—89, § 25.) Although general severability statutes carry less weight in ascertaining legislative intent than specific severability clauses, they do establish a presumption that the legislature intended for an invalid statutory provision to be severable. (*People ex rel. Chicago Bar Association v. State Board of Elections* (1990), 136 Ill. 2d 513, 532.) This presumption will be overcome and the entire act held unconstitutional if the legislative body would not have passed the statute with the invalid portion eliminated. (*State Board of Elections*, 136 Ill. 2d at 533.)

> "The settled and governing test of severability is whether the valid and invalid provisions of the Act are 'so mutually "connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried

into effect the legislature would not pass the residue independently \*\*\*".' [Citation.] The provisions are not severable if 'they are essentially and inseparably connected in substance.' " *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 540, quoting *People ex rel. Dougherty v. City of Rock Island* (1915), 271 Ill. 412, 422.

Here, it is clear that the county board would have intended that the ordinance remain in force despite the elimination of the forfeiture provision. (See *Grais v. City of Chicago* (1992), 151 Ill. 2d 197, 226.) Further, and contrary to plaintiffs' contention, this portion of the appeals provision is not such an interdependent and essential part of the ordinance that its severance requires the remainder of the ordinance to fall. As the appellate court aptly stated: "The ordinance is still operative and it still serves the legislature's intent of ensuring that new developments pay their fair share of road improvements. Since the legislative purpose is not defeated by the invalidation of the forfeiture provision, we may leave the remainder of the ordinance in force." 251 Ill. App. 3d at 511.

Regarding plaintiffs' argument that the second enabling act and the current Du Page County ordinance violate the constitutional right to travel, we hold that plaintiffs do not have standing to raise this challenge. In *Nordlinger v. Hahn* (1992), 505 U.S. 1, 120 L. Ed. 2d 1, 112 S. Ct. 2326, the United States Supreme Court held that the petitioner could not assert the constitutional right to travel as a basis for heightened scrutiny under the equal protection clause, because the petitioner did not allege that she herself had been impeded from traveling or from settling in the State imposing the challenged regulation. Where the petitioner had not identified any obstacle preventing others who wished to travel or settle in the State from asserting claims on their own behalf, nor shown any special relationship with those

whose rights she sought to assert, the Court stated that its "prudential standing principles" would prohibit the petitioner from raising another person's legal rights. (*Nordlinger*, 505 U.S. at 10-11, 120 L. Ed. 2d at 12-13, 112 S. Ct. at 2332.) Similarly here, where plaintiffs do not claim that they themselves have been impeded from traveling or from settling in Illinois or in Du Page County as a result of the enabling acts or Du Page County ordinances, plaintiffs are precluded from asserting the constitutional right to travel as a basis for heightened review.

Finally, we find it unnecessary to address the argument of plaintiff Joe Keim Builders, Inc. (Keim), that section 5—918 of the second enabling act requires Du Page County to refund certain impact fees which Keim previously paid. The $12,987 in fees which Keim paid from September 5, 1989, to March 10, 1990, were imposed under authority of the first enabling act and an ordinance passed pursuant thereto, ODT—021—89. Therefore, because we have invalidated all Du Page County ordinances passed pursuant to the first enabling act and ordered the monies collected thereunder be returned, the relief Keim seeks has been granted.

In conclusion, we hold that: (1) the first enabling act is unconstitutional; (2) the Du Page County ordinances passed pursuant to the first enabling act are invalid and the monies collected thereunder should be returned; (3) the second enabling act is constitutional; (4) Du Page County ordinance ODT—021C—89 complies with the requirements of the second enabling act; and (5) section 11(2) of ODT—021C—89 is unconstitutional but severable from the remainder of the ordinance.

The judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court is affirmed in part and reversed in part.

The cause is remanded to the circuit court for proceedings consistent with this opinion.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part;*
*cause remanded.*