THE PEOPLE *ex rel.* the County of Du Page *et al.,* Appellees, *vs.* DONALD R. SMITH, County Treasurer, Appellant.

*Opinion filed March 29, 1961.*

574

. Ervin F. Wilson, of Elmhurst, for appellant.

William J. Bauer, State's Attorney, of Wheaton, and Edward J. Vertovec, of Elmhurst, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This appeal, which tests the validity of "An Act in relation to water supply, drainage, sewage, pollution and flood control in certain counties," (Laws of 1959, p. 1882,) grows out of a *mandamus* action filed in the circuit court of Du Page County wherein the county of Du Page (herein referred to as plaintiff) and certain of its officials, sought to compel defendant, the county treasurer, to approve and execute a trust agreement, revenue bonds and revenue coupons, all as provided in a county ordinance adopted under the authority of the act in question. The court below ordered a writ of *mandamus* to issue, and this direct appeal, involving the constitutionality of the statute, has been prosecuted by defendant.

Section 1 of the act provides that it shall apply to any county which is contiguous to another county having 1,000,-000 or more inhabitants after appropriate action by the county board accepting the provisions of the act. (Ill. Rev. Stat. 1959, chap. 34, par. 3101.) Section 6 provides that in order to effect protection, reclamation or irrigation of the land and other property in the county "and to accomplish all other purposes of the county," the board is authorized to construct and maintain, among other things, sewers, holding basins, pumping stations, siphons and "any other works and improvement deemed necessary to construct, preserve, operate or maintain" a department of public works in such county. (See: pars. 3102, 3106.) Thereafter, section 11 states that the county board shall have the authority to control and regulate the disposal of sewage, refuse and other putrescible, infectious and otherwise objectionable wastes from any premises in the county and may adopt suitable ordinances to such end, (par. 3111,) while section 12 authorizes counties to construct, alter, maintain and extend sewers. (Par. 3112.)

Under the terms of section 17 of the act, and in order to pay the cost of sewage facilities, the county board is

authorized to issue and sell revenue bonds payable solely from income and revenue derived from the operation of the sewage facilities, and it is directed that the ordinance authorizing the bond issue shall specify the manner and terms for payment of the bonds, and set forth the covenants and undertakings of the county in connection with the issuance thereof. (Par. 3117.) Section 19, which has particular significance in this case, states that any ordinance authorizing the issuance of revenue bonds may provide, in the discretion of the board, that the bonds be secured by a trust agreement or depositary agreement by and between the county board and a corporate trustee, containing provisions for directing and supervising the rights and remedies of the bondholders, but that no such trust deed or agreement shall be a lien on the sewage facilities or waterworks property as the case may be. (Par. 3119.) In addition, section 20 provides that the income from a sewage facility shall be sufficient for and shall be used to pay the principal and interest on the bonds, (par. 3120) and section 21 directs that the rates for the use and service of the sewage facility be such as to pay principal and interest, costs of operation and maintenance, and to provide a reasonable depreciation fund. (Par. 3121.)

On November 10, 1960, under authority of the act, the plaintiff adopted an ordinance authorizing the construction of a sewage disposal system, to consist of sewers, sewage lift stations and pumps, and a sewage treatment or disposal plant. The ordinance provided for the issuance of sewage bonds totalling $1,000,000 to pay the cost of the facility and that such bonds would be payable solely from the revenue of the sewer system. Further, it set forth the form of the bonds and coupons to be issued, stated that the county treasurer had requested the county board to designate a corporate trustee with whom a trust agreement could be entered into for securing the payment of the bonds, that interest and principal on the bonds would be payable at the

Continental Illinois National Bank and Trust Company of Chicago, and that, after the bonds were issued, the county treasurer would cause the revenues collected from the sewage system to be set aside and deposited with the corporate trustee.

By other terms of the ordinance, the county covenanted and agreed with the bondholders that rates would be charged for the sewage service as long as any bonds or coupons were outstanding and unpaid, and that the county would require that connection be made to the county system wherever sewerage service is available.

Following the adoption of the ordinance, the county board selected Continental as the corporate trustee and submitted a form of trust agreement to defendant-treasurer for his signature and approval. This he refused to do, and likewise declined to execute the bonds and coupons as required by the ordinance, based upon objections which are embodied in the contentions to this court. This proceeding for a writ of *mandamus* followed.

Defendant first contends that the provisions of the act limiting its application to counties contiguous to another county having 1,000,000 population renders the act a local or special law in violation of section 22, article IV of the Illinois constitution. More specifically, defendant points out that the act can apply only to the five counties contiguous to Cook County, and argues that the classification made on the basis of population is wholly artificial since the problems to which the legislation refers are no different in the five counties than they are in the remaining counties of the State. On this basis he asserts that the artificial distinction was made solely for the purpose of creating a special class, thus rendering the act offensive to the constitutional provision in question.

The proscriptions of section 22 of article IV against "local or special" laws do not mean that an act shall have effect upon every individual in every locality, and a law

may be general notwithstanding that it may operate only in a single place where conditions necessary to its operation exist. (*Alexander* v. *City of Chicago,* 14 Ill.2d 261; *Du Bois* v. *Gibbons,* 2 Ill.2d 392.) A law is general not because it embraces all of the governed, but because it may, from its terms, embrace all who occupy a like position to those included. (*People ex rel. Adamowski* v. *Public Building Com. of Chicago,* 11 Ill.2d 125; *People* v. *Chicago Transit Authority,* 392 Ill. 77.) If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects. (*Hunt* v. *County of Cook,* 398 Ill. 412.) In this regard, it is well settled that an act is not local or special merely because of a legislative classification based upon population, (*Alexander* v. *City of Chicago,* 14 Ill.2d 261,) or territorial differences, (*People ex rel. Adamowski* v. *Public Building Com. of Chicage,* 11 Ill.2d 125.) Such classifications will be sustained where founded upon a rational difference of situation or condition existing in the objects upon which it rests, and where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished. *Du Bois* v. *Gibbons,* 2 Ill.2d 392; *Gaca* v. *City of Chicago,* 411 Ill. 146.

Manifestly, in the instant case, the act under attack is directed to the vital object and purpose of protecting health and property and we believe, as the court did in *Stapleton* v. *Pinckney,* 293 N.Y. 330, 57 N.E.2d 38, that "proximity to great centres of population," may present a reasonable basis for classification, particularly where matters of health are concerned. A rational and substantial difference with respect to sewage and pollution control, and the need therefor, clearly exists between rapidly growing counties contiguous to a large and heavily populated metropolitan area

on the one hand and counties with a relatively stable population on the other. We may take judicial notice that the population of Cook County is considerably more than 5,000,000 inhabitants, and we know, both from common knowledge and from litigation which has reached us, that nonurban areas in the counties contiguous to Cook County have in recent years experienced an extremely rapid increase in residential and industrial growth. Indeed, the tendency of the time has been for urban dwellers and urban business to go to the edges of large urban areas, where land is less crowded and more attractive, rather than to rebuild deteriorated properties within existing population centers. It goes without saying that the more densely nonurban areas become populated, the greater will be the problems of sewage and pollution and the need for their control. It is our opinion that the circumstances which show a pronounced over-flowing of Cook County's population and industry into the adjoining counties presents a unique population and territorial combination giving rise to sewage and pollution problems of unusual magnitude and urgency. Accordingly, we conclude there is a reasonable basis for the classification provided in the present act, and that it bears a reasonable and proper relation to the objects and purposes of the act. Consequently, section 22 of article IV is not contravened.

It may be that the so-called "population explosion" of the last decade has caused the same problems of sewage and pollution to exist in a lesser degree in other counties of the State. However, the legislature is not bound to pass one law meeting every exigency, but may consider degrees of evil, and if a law hits the evil where it is most felt, it is not to be overthrown merely because there are other circumstances to which it might have been applied. *People ex rel. Adamowski v. Public Building Com. of Chicago,* 11 Ill.2d 125; *Gill v. Boston Store,* 337 Ill. 70.

The ordinance enacted by the plaintiff provides for the

construction of a sewage treatment plant and it is defendant's next contention that plaintiff is without authority to do so, inasmuch as section 6 of the act, which enumerates certain facilities that may be built, does not expressly authorize or include a sewage treatment plant.

While it is true a municipal corporation has only such powers as are conferred upon it by the General Assembly, (*Village of Kincaid* v. *Vecchi*, 332 Ill. 586,) it is at the same time a commonplace principle of statutory construction that the legislative grant of power carries with it the right to use all means and instrumentalities necessary to the beneficial exercise of the expressly conferred powers. (*Strub* v. *Village of Deerfield*, 19 Ill.2d 401; *Illinois Power Co.* v. *City of Jacksonville*, 18 Ill.2d 618.) The act in the present case concerns itself with sewage and pollution control and it is the express direction of section 11 that the county board "shall have the authority to control and regulate *the disposal of sewage*," etc. (emphasis supplied) from any premises within the borders of the county. Again, in section 6, it is provided that the county shall have the power to construct certain facilities, including sewers, holding basins and pumping stations, and there is included the broad power to construct "any·other works and improvement deemed necessary to * * * operate or maintain" a county department of public works. See:·Ill. Rev. Stat. 1959, chap. 34, pars. 3102, 3106, 3111.

If the purposes of the act are to be carried out, and if the power to regulate the disposal of sewage is to be beneficially exercised, it is quite apparent the legislature intended for the county to have the power to do more than to merely construct sewers, holding basins and pumping stations. (Cf. *Consumers Co.·*v. *City of Chicago*, 313 Ill. 408, *City of Elmhurst* v. *Rohmeyer*, 297 Ill. 430.) A sewage disposal or treatment plant is an integral part of a sewer system, and we hold that the power to erect such a plant is implied in the general grants of power to regulate the disposal of

sewage and to construct sewers. This was the holding in *Drexel* v. *Town of Lake,* 127 Ill. 54, and is the generally accepted view of other leading jurisdictions. See: 11 McQuillin, Municipal Corporations, sec. 31.20, 3rd ed. 1950.

Nor may it be said, as defendant contends, that the authority to construct a sewage disposal plant is excluded by virtue of the maxim which states *expressio unius est exclusion alterius*—the mention of one thing implies the exclusion of another thing. The maxim is not of universal application and should not be used to defeat the intent of the legislature. (*Lehman* v. *Hill,* 414 Ill. 173; *Patteson* v. *City of Peoria,* 386 Ill. 460.) Moreover, as pointed out in the *Patteson case,* where a statute contains an enumeration of certain things to which an act applies and also a general term or expression concerning the application of the act, the general term may be given full effect if the context shows the enumeration was not intended to be exclusive. The express purport of the present act is that the facilities enumerated in section 6 were not intended to be exclusive.

Turning his attack to plaintiff's ordinance, defendant contends the county has neither the power to require connections to be made to its sewer system, nor the power to contract with bondholders that such connections will be required. Neither point is well taken.

Section 11 of the present act expressly provides that the county board shall have the power to control and regulate the disposal of sewage, refuse and other putrescible, infectious and otherwise objectionable wastes from any premises within the borders of the county, and states that suitable ordinances may be adopted to such end. Apart from this, by other provisions of the Counties Act, the legislature has delegated to counties the power to do all acts and make all regulations necessary or expedient for the promotion of health and the suppression of disease, (Ill. Rev. Stat. 1959, chap. 34, par. 419,) and the power to prescribe, for the

purpose of promoting and safeguarding the public health, safety, comfort and welfare, reasonable rules concerning the construction and maintenance of buildings and appurtenances thereto. (Par. 422.) For considerations of public health fully stated in *City of Nokomis* v. *Sullivan*, 14 Ill.2d 417, which we adopt but do not repeat, it is clear that these powers conferred upon counties constitutionally vest them with the authority to require property owners to connect with a sewer system, provided of course the requirement is not unreasonable. Whether the county here has an ordinance requiring connection, and whether that ordinance is reasonable was not put in issue below and is not before us. We decide only that the power to enact a reasonable ordinance exists.

To support his contention that the county does not have the power to contract with the bondholders that connections with the system will be required, defendant argues that by such a contract the county divests itself, in part, of the power to enact future regulations concerning connections. The precise language of the ordinance is, however, that the county covenants with the bondholders: "(i) As long as any Bonds or coupons are outstanding, the County will require that proper connection to the sewerage system of the County be made wherever sewerage service is available." When these words are given their plain meaning it cannot be said that the county has divested itself of any powers, but is left free from time to time to determine what "proper connection" will entail.

For his next contention defendant asserts that the service charge to be established for use of the system is invalid if connection to the county system is compulsory. The sweep of his argument is that the service charge is in reality a tax and will in this case violate the constitutional requirement that taxes be equal and uniform. While we see little validity in the constitutional claim the defendant makes, it is enough to point out there is a clear cut and definite distinction be-

tween the legal conception of such charges and taxes. See: *People ex rel. Curren* v. *Schommer*, 392 Ill. 17, 22.

Taxes are an enforced proportional contribution levied by the State by virtue of its sovereignty for support of the government. (*Wagner* v. *City of Rock Island*, 146 Ill. 139; *Rockford Loan Assn.* v. *City of Rockford*, 352 Ill. 348; *Zehender & Factor, Inc.* v. *Murphy*, 386 Ill. 258.) Service charges, tolls, water rates and the like are, on the other hand, contractual in nature, either express or implied, and are compensation for the use of another's property, or of an improvement made by another, and their amount is determined by the cost of the property or improvement and the consideration of the return which such an expenditure should yield. (*Wagner* v. *City of Rock Island*, 146 Ill. 139; *People ex rel. Brockamp* v. *Schiltz Brewing Co.*, 261 Ill. 22; *People ex rel. Curren* v. *Schommer*, 392 Ill. 17.) The charge is made, not by virtue of the sovereignty of the governmental unit, but in its business or proprietary capacity. (*Baltis* v. *Village of Westchester*, 3 Ill.2d 388.) Thus, regardless of whether or not connection is compelled, the charge arises from an implied contract and is a charge for the use of another's property rather than a contribution for the support of the government. This being so, it cannot be said that a charge for the use of plaintiff's sewer system is a tax which falls within the proscriptions of the constitution. Moreover, even if the charge could be deemed an involuntary contribution by the user of the system, such a charge, made pursuant to a law which is not a taxing statute but one enacted in the interest of public health and welfare, would not appear to come within the classification of general taxation. Cf. *Zehender & Factor, Inc.* v. *Murphy*, 386 Ill. 258.

As previously related, section 19 of the act provides that any ordinance authorizing the issuance of revenue bonds "may in the discretion of the county board provide that the bonds be secured by a trust or depositary agreement by and

between the county board and a corporate trustee, * * * containing such provisions for directing and supervising the rights and remedies of the bondholders deemed reasonable and proper, * * *." (Ill. Rev. Stat. 1959, chap. 34, par. 3119.) The ordinance here provides that the bonds will be secured by a trust or depositary agreement, states that the county treasurer requested the county board to designate a corporate trustee, and provides the county treasurer shall set aside revenues from the sewage system and cause them to be deposited with the corporate trustee in a fund to be designated as the "Sewage Disposal Fund of Du Page County." Also, as previously related, the county board has selected the Continental Illinois National Bank and Trust Company of Chicago as the corporate trustee.

Under authority of *People ex rel. Nelson v. West Englewood Trust and Savings Bank,* 353 Ill. 451, defendant asserts that section 19 is invalid since its effect is to strip the county treasurer, a constitutional officer, of the absolute custody of public funds which come into his posession. Stated otherwise, it is defendant's position that it is not within the power of the General Assembly to take the custody of public funds from the treasurer and repose it in another.

In the *West Englewood case,* a collateral issue, but one nevertheless directly passed upon, was the validity of a provision of the County Treasurer Act which compelled the county treasurer to deposit public funds daily in a bank within the county selected by the majority of an official body composed of the treasurer, the county clerk and the chairman of the county board. After pointing out, first, that both the power and duty of receiving and safely keeping public funds entrusted to the county treasurer in no way depend upon the authority of the legislature and, second, that it was possible under the statute that none of the banks designated would be of the treasurer's selection, this court found the statute to be invalid and concluded as fol-

lows: "The legislature is without power to compel a treasurer to put the public funds at profitable employment or to impose upon him any hazard whatever. When he assumes the duties of the office he accepts whatever risks and hazards there are incident to the receipt and safekeeping of the public funds, and the General Assembly is powerless to increase his hazard. He is a constitutional officer and the legislature cannot deprive him of his stewardship. Neither can it assume for itself the right to determine the depository for the public funds, whether such depository be a bank or otherwise. If such power can be exercised by the legislature it would have the right to take from him and repose in another the custody of public funds. Such a course of conduct would be out of harmony with the spirit of the constitution. There can be no doubt that the legislature has the right to require a treasurer to keep proper accounts and to make frequent reports of his fiscal affairs. Such duties in no way conflict with his constitutional duties. It is therefore our opinion that the legislature is without power to strip a treasurer of his right of absolute custody of the public funds which come into his possession under the law." 353 Ill. at 466-467.

We agree with defendant that section 19 of the statute being presently considered is subject to the same criticism and shortcomings. By its terms, it is the county board which is vested with the discretion as to whether the bonds shall be secured by a trust or depositary agreement, and it is further provided that such agreement shall be "by and between the county board and a corporate trustee." Section 20, which follows, then provides that the income and revenue from the facility shall be used only to pay bonds, interest, depreciation, operation and maintenance. The county treasurer is given no voice or choice in the matter, thus the result of the section is to effectively deprive the county treasurer of his absolute custody over public funds and to give it to others. Indeed, the ordinance of the plaintiff ap-

pears to have recognized such infirmity in the statute and to have sought to avoid it by providing that the county treasurer had requested the county board to designate a corporate trustee with whom a trust agreement or depositary agreement could be entered into.

Plaintiff argues, however, that the *West Englewood case* is inapplicable on its facts, and inapplicable also because the funds involved here are revenues from the sewerage system rather than general funds. We do not find that either argument has merit. While arising in a different factual setting, the prior decision squarely presented and decided the power of the legislature to deprive a county treasurer of the custody of public funds. As to the second contention it may be said that the sewerage system revenues are nonetheless public funds and, as plaintiff's ordinance specifically recognizes, are funds which the treasurer, by virtue of his constitutional status, has the duty and power of receiving and safely keeping. It is urged, too, that modern day business practices require that revenues used to pay bonded indebtedness be placed in the control of a corporate trustee, and that we should for this reason overrule the *West Englewood case*. We cannot, however, read into section 19 a provision which permits the county treasurer to give to or share his control over public funds with a corporate trustee, nor under the present statute, need we speculate as to his power to do so.

For the reason we have stated we conclude that section 19 is invalid. This is not to say, however, that the entire act is invalid. The invalidity of one section of an act or law does not affect the validity of the remainder unless it appears the legislature would not have enacted the law without including the invalid portion. (*Vissering Mercantile Co.* v. *Annunzio,* 1 Ill.2d 108; *City of Elmhurst* v. *Buettgen,* 394 Ill. 248; 34 I.L.P., Statutes, sec. 15.) Here, since the matter of a trust or depositary agreement between the

county board and a corporate trustee is left entirely to the discretion of the county board, it is manifest that the invalidity of section 19 could not and was not intended to affect the validity of the remaining sections.

Accordingly, since section 19 is invalid and since the ordinance, bonds and trust agreement in question are keyed to that section, it is our opinion that the writ of *mandamus* was improvidently issued in this cause and it is therefore quashed.

*Writ quashed.*