2019 IL App (1st) 182153

FIRST DISTRICT
SIXTH DIVISION
July 26, 2019

No. 1-18-2153

| | | |
|---|---|---|
| MARK GREEN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 15 CH 2430 |
| THE VILLAGE OF WINNETKA, | ) ) | Honorable Pamela McLean Meyerson, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Mark Green (Green) appeals from a summary judgment in favor of defendant Village of Winnetka (Village) in plaintiff's declaratory judgment action alleging that the Village's stormwater utility fee (Fee) is not a fee but actually a tax that violates the Illinois Constitution and Illinois Municipal Code. The circuit court granted summary judgment for the Village upon cross-motions for summary judgment by Green and the Village. On appeal, Green contends that the court erred in granting the Village's motion and denying his motion. For the reasons stated below, we affirm the judgment of the circuit court.

¶ 2                                    I. JURISDICTION

¶ 3    On September 14, 2018, the circuit court issued an order granting summary judgment for the Village. Green timely filed his notice of appeal on October 9, 2018. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art.

VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. July 1, 2017) governing appeals from a final judgment in a civil case.

¶ 4                                    II. FACTS

¶ 5     The Village is a municipal corporation under Illinois law. Green is a resident of the Village and owner of property in the Village. He has at all relevant times been subject to the Fee, which he has paid under protest since it came into force. Green filed a declaratory judgment action alleging the Fee was actually a tax disguised as a fee. His complaint as amended alleged that the Fee is a property tax that violates the uniform real-property taxation clause of the Illinois Constitution and the procedures for imposing a property tax in the Illinois Municipal Code. Ill. Const. 1970, art. IX, § 4; 65 ILCS 5/8-3-1 (West 2014).

¶ 6                                  A. Background

¶ 7     The Village is a suburb on Chicago's north shore. Situated along a large floodplain, the Village operates a network of storm sewers and pumping stations to alleviate flooding. Following flooding in 2008, the Village council (Council) considered improvements to its stormwater system that could further alleviate flooding. In 2011, the Village experienced massive rainfall that led to a 100-year flood, that is, a flood event that has a 1% chance of occurring in a given year. The Council then resolved to design a system sufficient to withstand a 100-year flood. To that end, the Council issued a stormwater management plan (Plan).

¶ 8                                  B. The Fee

¶ 9     In 2014, the Council adopted the stormwater ordinance (Ordinance), codified as chapter 13.16 of the Winnetka Village Code. The Ordinance's legislative findings state that "all real property in the Village contributes to runoff and either uses or benefits from the maintenance of the stormwater system." Winnetka Village Code § 13.16.010(A)(1) (adopted July 1, 2014). The

Ordinance states that it is in the best interests of health, safety, and general welfare that the stormwater system be operated as a municipal utility funded through user fees, and the Ordinance establishes such a "utility to provide for the management, operation, maintenance, engineering, planning, construction, enhancement and rehabilitation of the Village's storm water system." *Id.* §§ 13.16.010(A)(3), 13.16.030(A), 13.16.040(A). The Ordinance states Village policy "to provide a dedicated funding source for the construction, maintenance, operation and improvement" of the Village stormwater system and to collect a stormwater utility fee from any owner of real property in the Village that uses or benefits from the stormwater system "whether or not the owner or parcel is exempt from taxation." *Id.* § 13.16.010(B)(1), (2). The Ordinance provides that the Fee is "based on the extent to which each parcel creates a need for stormwater management; the amount of impervious area on each parcel; and the cost of operating, maintaining, and improving the stormwater system." *Id.* § 13.16.060(B).

¶ 10    The Ordinance imposes the Fee on the owners of property in the Village based upon an equivalent runoff unit (ERU) of 3400 square feet of impervious surface area, "rounded to the nearest 10th of an ERU" for a given parcel. *Id.* §§ 13.16.020, 13.16.070(A). The Ordinance defines impervious surface area as "the area within a parcel that prevents or significantly impedes the infiltration of stormwater into the soil. Impervious areas shall include, but are not limited to buildings, roofed structures, paved areas, walkways, driveways, parking lots, patios, decks, swimming pools, and similar non-porous areas." *Id.* § 13.16.020. A parcel with an impervious area of less than 170 square feet is not subject to the Fee. *Id.* § 13.16.070(A). "Dedicated public rights-of-way, such as roadways, sidewalks and alleys," are not subject to the Fee. *Id.* § 13.16.130. The Ordinance provides for a procedure for adjusting the Fee, including challenging errors in measuring or calculating the ERU. *Id.* § 13.16.100.

¶ 11 A parcel that does not discharge its stormwater into the Village stormwater system, directly or indirectly, may obtain a 100% credit of the Fee. *Id.* § 13.16.140(B)(1)(b). Similarly, a parcel where at least half of the stormwater runoff for a 100-year storm is detained and cleaned before discharge into the Village stormwater system may obtain a 50% credit of the Fee. *Id.* § 13.16.140(B)(1)(a).

¶ 12 The Fee has two components: the "base fee" and "other rates, fees, and charges." The base fee is the amount "charged each month per ERU in order to produce the amount of principal and interest on any outstanding stormwater utility system debt that is due and payable during the fiscal year" for which the base fee is calculated. *Id.* § 13.16.070(C)(1). The Ordinance defines the second component of the Fee as "[s]uch other rates, fees, and charges that the Village Council determines are necessary to recover all costs related to operating, maintaining, and improving the stormwater system utility." *Id.* § 13.16.070(C)(2).

¶ 13 The Ordinance provides that the Fee is assessed on each parcel's Village utility bill and that an unpaid Fee "shall constitute a lien against the property to which service was provided, to the extent such lien is authorized by law." *Id.* §§ 13.16.080(A), 13.16.090(B). It provides that "[a]ll revenues from the stormwater utility fee shall be deposited in the stormwater utility enterprise fund and shall be used solely for the operation, maintenance, expansion and rehabilitation of the stormwater infrastructure." *Id.* § 13.16.110(A).

¶ 14                                    C. Initial Litigation

¶ 15 Green alleged in his complaint as amended that the Plan called for the construction of a 7900-foot-long storm sewer under Willow Road (the Tunnel). Originally projected to cost $34.5 million, the Tunnel was intended to provide flood relief to about half of the Village. The Plan also called for about $8 million in improvements to the Village's existing stormwater system in

three other drainage areas. To finance the Plan, the Council allocated $8.2 million in reserve funds, more than sufficient to cover the improvements to the existing system. The Council chose to finance the remaining $34.5 million of the Plan by issuing municipal bonds, costing the Village over $61 million in principal and interest over the next 30 years, and to service the bonds by enacting the Fee. Green's amended complaint raised the prospect that the Village would not construct the Tunnel, based on the Council's discussion of significant cost increases.

¶ 16    Green alleged that the Council set an initial base rate of $262 per ERU, which would then climb steadily to $362 per ERU by 2018, to ensure the Village would receive enough funds to make $61.5 million in bond payments over the next 30 years. Green argued that the Fee is assessed only on developed property—that is, property with impervious surfaces—by multiplying each parcel's ERUs by the base rate. Green alleged that the Fee is not a valid fee for the stormwater system because it bears no relation to a property owner's actual use of the system. Instead, the Fee is a real property tax that was not levied on valuation as required by the constitution (Ill. Const. 1970, art. IX, § 4) nor adopted according to the statutorily prescribed procedure. 65 ILCS 5/8-3-1 (West 2014). Green alleged that the Fee is not proportional to use of the stormwater system because it is designed to cover the debt issued to finance the Tunnel, which would not service the entire Village, and because it does not vary according to the amount of stormwater actually discharged by property in the Village, as the Village does not measure each parcel's stormwater discharge into the system in order to assess the Fee.

¶ 17    The Village filed a motion to dismiss the complaint as amended. See 735 ILCS 5/2-615 (West 2014). It argued that all claims in the complaint as amended depended on Green's legal conclusion that the Fee was not a valid user fee but a real property tax and that the court could take judicial notice of the Ordinance provisions that contradicted Green's allegations. The

Village argued that the Fee is a valid user fee because (1) it compensates the Village for property owners' use of the stormwater system, including but not limited to the Tunnel; (2) the proceeds are segregated into a special fund for the stormwater system; and (3) the Fee is based on the cost of constructing, maintaining, and operating the stormwater system.

¶ 18    The Village argued that impervious land area does not allow stormwater to soak into the ground and thus causes stormwater runoff into the Village stormwater system. It argued that the Ordinance allows for the Fee to be adjusted as a property's impervious surface area changes and thus the Fee is directly and proportionately related to a property owner's use of the system. The Village argued that a fee does not have to be precisely metered to individual usage to be duly proportionate. The Village cited supreme court case law to the effect that a fee is not converted to a tax merely by being widely assessed, nor by imposing a lien to collect the fee, nor by using fee revenue to pay capital costs. The Village's motion cited extensively to *Church of Peace v. City of Rock Island*, 357 Ill. App. 3d 471 (2005), in which the Third District of this court upheld a stormwater utility fee. The Village argued that the validity of the Fee would not be changed if the Village did not construct the Tunnel: as the Ordinance requires all Fee revenue be spent solely on the stormwater system, Fee revenue not spent on the Tunnel would be spent on other improvements to or expenses of the stormwater system.

¶ 19    Responding to the motion to dismiss, Green argued that it improperly sought to contradict the facts alleged in his complaint as amended. Green also argued that a charge imposed to finance future construction, such as the Tunnel, is not a fee imposed based on actual use. He argued that reliance on *Church of Peace* was misplaced because that case was reviewing a summary judgment rather than a dismissal at the pleading stage.

¶ 20    The circuit court granted the Village's motion to dismiss, finding that Green could set forth no facts that would support his claim that the Fee was an invalid tax. Green appealed.

¶ 21                                D. First Appeal

¶ 22    On appeal, we reversed the dismissal and remanded for further proceedings. *Green v. Village of Winnetka*, 2016 IL App (1st) 152471-U. We found that Green's complaint as amended stated a cause of action that the Fee is an unconstitutional tax levied without voter approval. *Id.* ¶ 21. We noted that Illinois law defines a tax as a charge having no relation to the service rendered, assessed to provide general revenue rather than compensation, while a fee is proportional to a benefit or service rendered. *Id.* ¶ 25. We found that the resolution of Green's claim would require a factual determination as to the extent the Fee is actually used to construct, maintain, operate or improve the Village's stormwater system. *Id.* ¶ 35. However, "[g]overned solely by the allegations of the first amended complaint," which alleged that the Fee was unrelated to the Village's stormwater services, we found that Green stated a cause of action. *Id.* Thus, we found that dismissal of the complaint as amended was erroneous, while "we express[ed] no opinion as to the ultimate question." *Id.* ¶ 36.

¶ 23                             E. Summary Judgment

¶ 24    Following remand, the Village filed its answer to the complaint as amended. The Village admitted to the background allegations (*supra* ¶ 7) and to adopting the Ordinance and imposing the Fee, but it denied the substantive allegations.

¶ 25                               1. Village's Motion

¶ 26    The Village filed a motion for summary judgment, arguing that the Fee is a valid fee rather than a tax and that the allegations of the complaint as amended rest upon the legal conclusion that the Fee is a tax rather than a fee. The Village noted that a plaintiff's allegations

do not have to be taken as true for a summary judgment motion where the material facts are undisputed. Faced with the aforementioned 2011 flooding, the Village employed a consultant who recommended the Village adopt a stormwater utility fee based on the impervious area of village in the land because impervious area contributes to stormwater runoff and each parcel's impervious area can be readily determined. The Village noted that various Illinois municipalities had adopted stormwater utility fees based upon impervious surface area, citing various municipal ordinances to that effect. The Village then adopted the Ordinance as set forth above.

¶ 27    The Village argued that a facial challenge to an ordinance succeeds only if no set of circumstances exists under which the ordinance is valid. Citing *Church of Peace*, the Village reiterated many of the arguments in its motion to dismiss as to the validity of the Fee, including that a fee must bear a reasonable relationship to cost rather than an exact or measured relationship. The village argued that the Ordinance and the Fee are not unreasonable or arbitrary. The Village admitted that the Tunnel was no longer in its plans for the stormwater system.

¶ 28    The Village's motion was supported by a copy of the Ordinance and by a signed declaration by Steven Saunders, the Village's engineer and director of public works who was thus "in charge of the **** Village's stormwater system." Saunders's declaration discussed the flooding in the Village in 2008 and 2011 and the hiring of the consultant "to study different funding options for the maintenance and improvement of the Village's stormwater system." Saunders's declaration also discussed and cited the consultant's feasibility study containing its recommendations. Saunders stated that the "amount of impervious area on a property is directly and proportionally related to an owner's use of the stormwater system *** because if impervious areas block water from being absorbed into the ground on a particular property, the storm water must either evaporate (which accounts for a negligible amount of stormwater during a storm) or

run off the property into the Village's stormwater system." Saunders stated that the Ordinance was (1) adopted based in large part on the recommendation of the consultant and (2) modeled upon the ordinance upheld in *Church of Peace*. Attached to Saunders's declaration and incorporated therein by Saunders's references thereto was a copy of the consultant's study.

¶ 29                                    2. Green's Motion

¶ 30    Green also filed a summary judgment motion, reiterating his claim that the Fee is not a valid fee but a tax improperly adopted. He argued that there were no genuine issues of material fact in dispute and that the Village was raising the same arguments against that claim that this court rejected on appeal. Green succinctly summarized his argument that the Fee is a tax rather than a fee for services rendered:

> "(1) Winnetka historically funded stormwater maintenance and capital needs through property taxes; (2) the [Fee] is charged to property owners (like property taxes) as opposed to residents (like garbage service); (3) the [Fee] is derived from the amount needed to finance construction costs of new infrastructure; (4) some property owners are being charged but receive no direct benefit; (5) the [Fee] is not tied to the actual use of the system, and Winnetka makes no attempt to measure discharge by property owners; (6) the [Fee] is being charged in advance; and (7) the [Fee] remains the same each month, regardless of the amount of rainfall."

¶ 31    Green noted that "the Village claims the amount of impervious surface can serve as a proxy for stormwater use" but argued that "the use of impervious service [*sic*] as used by the Village is a poor substitute to quantify any owner's use of the system" because the Village did not perform tests to determine the proportionality of impervious surface area to stormwater

runoff and it does not include public roads as impervious surfaces but does consider private roads impervious surfaces. Green noted that the Fee is collected in advance for the following two months rather than the preceding two months. He argued that a landowner could "escape" the Fee only by constructing a water retention project and proving 100% water retention. "Other than via the credit system, a property owner cannot adjust his use of the system by contributing less stormwater to the system because the Village does not measure stormwater," he argued, unlike other Village utilities where a landowner can reduce his bill by using less.

¶ 32    Green argued that *Church of Peace* was inapposite. He noted that this court stated therein that the "record herein established that there was a direct and proportional relationship between imperviousness and storm water runoff, thus creating a rational relationship between the amount of the fee and the contribution of a parcel to the *** storm water system." *Church of Peace*, 357 Ill. App. 3d at 475. He argued that the record does not so establish here because the Fee "is based on paying for the costs of bonds that Winnetka issued to finance the construction of the stormwater system" and "Winnetka allocates the costs of repayment of those bonds by charging property owners the same amount each month (based on impervious surface) regardless of how much stormwater runs into the system."

¶ 33    Green argued that a charge imposed to finance potential future construction projects is not based on actual use and thus not a fee, relying upon *Norwick v. Village of Winfield*, 81 Ill. App. 2d 197 (1967). Green argued that the Fee was levied to finance the Tunnel, which the Village did not build. He noted the Village's argument that it dedicated the Fee revenue to stormwater system projects but argued (1) that the stormwater system services the entire Village so that financing of the stormwater system is a tax and (2) that the Village decision to not build

the Tunnel "demonstrates that the fee has *no relation* to the 'service' Winnetka purportedly provides." (Emphasis in original).

¶ 34    Attached to Green's summary judgment motion were the depositions of Village Engineer Saunders and Village Manager Robert Bahan.

¶ 35                                    3. Village's Response

¶ 36    The Village filed a response to Green's motion and reply in support of its motion. The Village reiterated that a fee is paid pursuant to an express or implied contract with a municipality in exchange for services, property, or improvements and that a fee need not precisely reflect the actual value or cost of the service, property, or improvement. The Village argued that its motion "provided the Court with documentary evidence and sworn testimony demonstrating that the calculation of the Stormwater Fee based on the amount of a property's impervious surface is directly related to the amount of stormwater services and infrastructure used by a property owner." Noting Village Engineer Saunders's statement attached to the Village's motion and the consultant's study attached to Saunders's statement, the Village argued that Green's motion "presented no evidence or counter-affidavits refuting the relationship between impervious surface and use of stormwater services and infrastructure."

¶ 37    Attaching a copy of the ordinance upheld in *Church of Peace*, which also assesses a stormwater fee based upon impervious surface area, the Village argued that there was no reason not to consider *Church of Peace* binding precedent herein. The Village argued that the Fee is not calculated solely to pay the bonds, noting that only one of the two components of the Fee is linked to bond service while the other component is calculated to pay for all costs of operating, maintaining, and improving the entire Village stormwater system. Noting Green's argument that

this court had already ruled in his favor against the Ordinance and Fee, the Village noted that this court's ruling was expressly limited to the dismissal of Green's action at the pleading stage.

¶ 38    Citing Bahan's deposition, the Village stated that stormwater runoff cannot be metered or practically measured. The Village argued that a fee is not improper merely because a challenger believes there is a better method for assessing it. The Village argued that a fee may reimburse a local government not only for actual use of a system but for the cost of improvements to be made to the system and that *Norwick*, to the contrary, was narrowly based on the fact that the municipality therein did not have home rule authority.

¶ 39    The Village argued that the Ordinance expressly provides for adjustment of the Fee based on reassessment of a parcel's number of ERUs, as when a landowner shows that she has removed a portion of her parcel's impervious area. The Village argued that the Fee is collected to pay for operating and constructing of the stormwater system, which occurs whether or not it rains in a particular month, and argued that Green cited no case law for the proposition that collecting a fee in advance renders the fee a tax. The Village countered Green's argument that the Fee is a property tax because it is collected from property owners rather than residents of the Village by arguing that a property owner "ultimately has the most control over the amount of impervious surface" and noting that our supreme court upheld a transportation impact fee levied upon property owners against a challenge that the fee was a real property tax. *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25 (1995).

¶ 40                                    4. Green's Reply

¶ 41    Green filed a reply in support of his summary judgment motion, reiterating many of his earlier points including his argument that this court's earlier decision herein was dispositive in his favor.

¶ 42                                    5. Disposition

¶ 43    The circuit court heard argument by the parties on their motions for summary judgment

on September 6, 2018. Following arguments, the court found that *Church of Peace* governed this

case and the consultant's study for the Village established the relationship between impervious

surface and runoff, which "does not have to be exact." The claims in Green's complaint as

amended not being borne out by the evidence presented by the parties in their motions, the court

found summary judgment for the Village to be appropriate.

¶ 44    The court issued an order on September 14, 2018, granting summary judgment for the

Village and denying Green's summary judgment motion. This appeal timely followed.

¶ 45                                    III. ANALYSIS

¶ 46    On appeal, Green contends that he was entitled to summary judgment because the Fee is

an unconstitutional tax, rather than a valid fee for use of the Village stormwater system, because

the Fee bears no relationship to actual use of the system. The Village responds that summary

judgment for the Village was proper because the Fee is not a tax but a fee directly,

proportionally, and reasonably related to a property owner's use of the system.

¶ 47                                    A. Basic Law

¶ 48    Summary judgment should be granted only where the pleadings, depositions, admissions,

and affidavits on file show that there is no genuine issue of material fact and the moving party is

clearly entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). Both

plaintiffs and defendants may file for summary judgment. *Id.* § 2-1005(a), (b). When parties file

cross-motions for summary judgment, they agree that there is no genuine issue of material fact,

and the case may be resolved as a matter of law. *Oswald v. Hamer*, 2018 IL 122203, ¶ 9. Our

review of a grant of summary judgment is *de novo*. *Id.*

¶ 49     Green's declaratory judgment action against the Village is a facial challenge to the constitutionality of the Ordinance creating the Fee. A facial challenge to the constitutionality of legislation is the most difficult challenge to make successfully, because legislation is facially invalid only if no set of circumstances exists under which it would be valid. *Id.* ¶ 40. Legislation carries a strong presumption of constitutionality, and the party challenging the validity of legislation has the burden of clearly establishing the alleged constitutional infirmity. *Id.* ¶ 29. Courts must construe legislation to uphold its constitutionality if reasonably possible and must resolve any doubts in its construction in favor of its validity. *Id.* The same presumption of validity applies to a constitutional challenge to a municipal ordinance. *LMP Services v. City of Chicago*, 2019 IL 123123, ¶ 15.

¶ 50                                B. Taxes and Fees

¶ 51     "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2. "[T]axes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." Ill. Const. 1970, art. IX, § 4(a).

¶ 52     Under Illinois law, a tax is a charge assessed to provide general revenue with no relation to a service rendered, while a fee is a charge that is compensation for a service rendered. *Crocker v. Finley*, 99 Ill. 2d 444, 452 (1984). In other words, taxes are mandatory proportional contributions for support of the government, while fees are paid pursuant to an express or implied contractual relationship with a unit of government in exchange for services, use of property, or improvements. *People ex rel. County of Du Page v. Smith*, 21 Ill. 2d 572, 583 (1961).

¶ 53 Fees are reasonable compensation for services rendered or to be rendered. *Cook County v. Fairbank*, 222 Ill. 578, 582-86 (1906). " 'It is true the statute calls the charge a "fee," but if it is apparent upon the face of the statute that the charge is, in fact, not based upon actual and necessary services rendered, *or to be rendered*, but is based entirely upon a *property valuation*, thereby partaking of the nature of a tax, it would seem to be wholly immaterial by what name the statute may designate it.' " (Emphases added.) *Id.* at 584 (quoting *State ex rel. Nettleton v. Case*, 81 P. 554, 556 (Wash. 1905)). The amount of a fee need not be the precise or actual value or cost of the services, property, or improvements provided to a particular user. *Kough v. Hoehler*, 413 Ill. 409, 417-19 (1952) (upholding charge for state patients "computed on the general average per capita cost of operation of all State hospitals" and finding it to not be a tax).

¶ 54 Where a county adopted an ordinance authorizing construction of a sewer system, financing construction by issuing bonds to be paid by sewer charges, and requiring property owners connect their parcels to the system, our supreme court rejected the contention that the sewer charge was a tax violating the constitutional requirement of uniform taxation. *Smith*, 21 Ill. 2d at 576-77, 582-83. Compulsory connection did not alter the implied contract for sewer service and render the sewer charge a tax. "[E]ven if the charge could be deemed an involuntary contribution by the user of the system, such a charge, made pursuant to a law which is not a taxing statute but one enacted in the interest of public health and welfare, would not appear to come within the classification of general taxation." *Id.* at 583.

¶ 55 Similarly, where a county adopted ordinances dividing the county into districts and assessing a transportation impact fee upon owners of newly developed real property within those districts to finance road improvements in those districts, our supreme court rejected a contention that the impact fee was a real property tax levied contrary to the constitutional requirement of

uniform taxation based on property valuation. *Northern Illinois Home Builders Ass'n*, 165 Ill. 2d at 41-42. Reciting the definitions of taxes and fees from *Smith*, the supreme court found that "the evidence shows that transportation impact fees are compensation for an improvement made by the county, and that the fee is determined by the cost of the improvements to be made in each district." *Id.* at 42. "The fact that those who create the need for road improvements are property owners does not turn a service fee into a property tax." *Id.* at 43. "Therefore, the charge, as in *Smith*, is for the use of the county's property or improvement rather than a contribution for the support of the government." *Id.* at 42-43.

¶ 56    The supreme court in *Northern Illinois Home Builders Ass'n* also rejected a contention that the "impact fees violate the uniformity clause because the funds collected inure to the general public, yet certain taxpayers are excluded from the obligation of paying the fee, making the classification of fee payers unreasonable." *Id.* at 43. "[E]ach new housing unit produces a need for a determinable amount of new road lane, *which will necessarily be used by the general public*. However, the only benefit provided from this road construction is to new development, not to present residents of a county who would experience a decline in service in the absence of improvements which maintain current traffic levels." (Emphasis added.) *Id.* at 44 n.3. While the impact fee was not the same in each district and some districts had no impact fee, "the fee differences arising from variant road improvement costs *** are real and substantial differences which do not violate the uniformity clause." *Id.* at 45.

¶ 57                                   C. *Church of Peace*

¶ 58    In *Church of Peace*, several churches in Rock Island challenged a stormwater service charge levied by the City of Rock Island (City) upon property owners including the churches.

*Church of Peace*, 357 Ill. App. 3d at 472. The churches claimed that the charge was a tax on real property from which houses of worship are exempt. *Id.*

¶ 59     The City's ordinance establishing the charge at issue provided that the charge would be assessed upon "[a]ll developed property in the City *** except street and highway rights-of-way owned by a township, Rock Island County, the City or the State of Illinois" and that "all revenues" from the charge would be deposited into a stormwater fund to pay for the City's stormwater utility. (Internal quotation marks omitted.) *Id.* at 473. The charge was assessed upon a parcel's impervious area units (IAU), defined as 2800 square feet of impervious area. *Id.* The ordinance defined impervious area or surface as "those areas that prevent or impede the infiltration of storm water into the soil. Common impervious areas include, but are not limited to, rooftops, sidewalks, walkways, patio areas, driveways, parking lots, storage areas, compacted aggregate and awnings." (Internal quotation marks omitted.) *Id.*

¶ 60     Both the churches and City moved for summary judgment, which the circuit court granted for the City, as it found the charge to not be a tax but a user fee. *Id.* at 474. The trial court found the charge to be voluntary because "a landowner could install [their] own storm water retention system in order to qualify for a credit against the charge," and it "noted that the money raised through the charge went into a dedicated fund solely for storm water purposes and did not go into general revenue. Excess funds could only be held in reserve for future operations/repairs/improvement to the storm water system." *Id.*

¶ 61     On appeal, the Third District of this court found the issue to be one of first impression in Illinois. *Id.* at 475. Reciting our supreme court's definitions of taxes and fees in *Smith*, this court noted the churches' arguments that the charge was a tax: "They note that the charge imposes a 'cost' on property, thus tracking with the statutory definition of a tax. They also note that the

service provided—storm water drainage—is a not a benefit to the particular parcel of property but, rather, is a governmental service for benefit of the general common good." *Id.* However, this court found that the record "established that there was a direct and proportional relationship between imperviousness and storm water run-off, thus creating a rational relationship between the amount of the fee and the contribution of a parcel to the use of the storm water system." *Id.* "After reviewing the case law cited" from other states, this court found that "the more recent case law favors the position that storm water service charges are a fee." *Id.* at 476.

¶ 62 The churches argued in particular that the circuit court erred in finding the charge to be voluntary. However, this court found:

"The trial court's determination that the opt-out provisions of the ordinance [were] sufficient to make the charge voluntary is sound. Clearly, if any of the plaintiffs chose to not avail themselves of the storm water drainage system provided by the City, it could do so and avoid paying the assessment. While it might be cost prohibitive for each plaintiff to construct its own storm water runoff containment system, each would certainly be able to calculate the cost of doing so versus the cost of paying for the use of the City's system. Voluntary participation involves nothing more than weighing the competing costs of participation." *Id.*

This court concluded that the charge at issue was a valid fee rather than a tax, and it affirmed the summary judgment for the City. *Id.*

¶ 63 D. *City of Lewiston v. Gladu*

¶ 64 Here, the Village instituted the Fee in part to pay for bond service for planned stormwater system improvements, and the Ordinance provides that the "base fee" portion of the Fee pays for debt service, while the remainder of the Fee is for expenses of the Village stormwater system in

general. Green argues that this fact is highly significant and distinguishes this case from *Church of Peace*. Until now, this court has not had occasion to resolve whether the analysis in *Church of Peace* is affected by the fact that the charge at issue was instituted in part to pay for bond or debt service. However, the Supreme Judicial Court of Maine has considered that question since *Church of Peace*. We may consider the opinions of the reviewing courts of other states addressing a particular issue as persuasive authority when Illinois courts have not resolved that issue. *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 36; *Midland Funding LLC v. Schellenger*, 2019 IL App (5th) 180202, ¶ 12.

¶ 65    In *City of Lewiston v. Gladu*, 2012 ME 42, ¶ 14, 40 A.3d 964, a landowner challenged a city's stormwater assessment, arguing in relevant part "that the purpose of the assessment is to raise revenue because forty-four percent of the [stormwater] Utility's budget goes toward debt services, including debts acquired by the City prior to the creation of the Utility." However, the Supreme Judicial Court of Maine noted that at least one other court had upheld a stormwater fee against a challenge that it was a tax because a fee could not "be used to cover capital improvements and infrastructure." *Id.* ¶ 15 (citing *Tukwila School District No. 406 v. City of Tukwila*, 167 P.3d 1167, 1172 (Wash. Ct. App. 2007)). The *City of Lewiston* court concluded:

> "The fact that the Utility acquired stormwater infrastructure debt from the City does not change the fact that the Utility is using the assessment to cover the costs of regulating stormwater runoff, and part of those regulatory costs include maintaining stormwater infrastructure. Because all of the Utility's expenses are for maintaining or administering the Utility, this factor weighs in favor of concluding that the assessment is a fee and not a tax." *Id.* ¶ 16.

¶ 66    We note that, on the issue of the fee's voluntariness, the *City of Lewiston* court quoted favorably from this court's analysis in *Church of Peace*. *Id.* ¶ 22. Indeed, it found the fee at issue to be voluntary precisely because the ordinance in *City of Lewiston* and the ordinance in *Church of Peace* both provided for a 100% credit. *Id.* ¶¶ 22-23. In doing so, it rejected the "argument that the high cost of avoiding the stormwater assessment renders the assessment involuntary," holding that the "fact that the costs of avoiding the assessment are quite high does not make the assessment involuntary." *Id.* ¶ 23.

¶ 67                                    E. Village's Ordinance

¶ 68    We consider several significant similarities between the Ordinance and Fee at issue here and the ordinance and fee upheld in *Church of Peace* to be powerful reasons to find that the instant case is governed by *Church of Peace*. Both the ERU here and the IAU in *Church of Peace* assess the stormwater fees at issue in terms of the impervious area of a parcel, and both ordinances define impervious area substantially identically. Both ordinances provide that property owners who do not use the municipal stormwater system may obtain a 100% credit of the fees at issue. Both ordinances provide that the revenue from the fees at issue is dedicated to a fund used solely to finance the municipal stormwater system. Both ordinances exempt public roads or rights-of-way from the fees at issue.

¶ 69    Green argues that the Fee is distinguishable because it was imposed to pay the bonds the Village issued. However, only one portion of the Fee—the "base fee"—is used to service bonds. The Ordinance provides that the Fee is the sum of the base fee and "[s]uch other rates, fees and charges that the Village Council determines are necessary to recover all costs related to operating, maintaining and improving the stormwater system utility." Winnetka Village Code § 13.16.70(C) (July 1, 2014). We find it fundamentally incorrect to state, as Green does, that the

Fee "is based upon paying for the costs of bonds that Winnetka issued to finance the construction of the stormwater system." The Fee pays for the entire Village stormwater system—indeed, the Village cannot use the Fee revenue to pay for anything else—and debt service is only a portion thereof.

¶ 70　Moreover, we agree with the courts in *City of Lewiston* and *Tukwila School District No. 406* that the fact that stormwater fee revenue is spent on capital improvements to the stormwater system, and to pay bonds issued for such capital improvements, does not render a stormwater fee a tax. Noting that the sewer ordinance at issue in *Smith* provided for the issuance of bonds for sewer improvements to be paid by the charge at issue therein, we consider the conclusion in those cases consistent with our supreme court's decision in *Smith*.

¶ 71　Against such a conclusion, Green cites *Norwick* for the proposition that "fees paid to finance future speculative construction projects are not based on actual use." This court held in *Norwick* "that connection charges may be established and collected for the actual use of an existing sewer or sewer system. Charges not relating to the actual use, such as, charges to provide a fund to build sewers at an undetermined future time and place are unauthorized and therefore invalid." *Norwick*, 81 Ill. App. 2d at 203. However, as the Village has correctly noted, *Norwick* so held on the grounds that the municipality therein did not have home rule authority, and this court found it "apparent that the legislature envisioned a pay-as-you-go scheme whereby an individual property owner would pay for his actual use of the system." *Id.* at 201. The *Norwick* court stated that "[i]t is horn-book law that Illinois municipalities are creatures of the legislature and therefore have only delegated powers" (*id.* at 199) and that the municipality directed "our attention to foreign cases. These are of no assistance because of the differences in the statutory provisions of those states. This is particularly true in states with so-called 'home

rule' municipalities." *Id.* at 202. Winnetka, by contrast, is a home rule municipality.[1] We see no reason to expand *Norwick* beyond its narrow holding to support Green's proposition to the detriment of *Smith*, *City of Lewiston*, and *Tukwila School District No. 406*.

¶ 72                                    F. Green's Arguments

¶ 73      Green argues against the Fee that it is a real property tax not properly assessed against the valuation thereof and that the stormwater system is of general use to the entire Village, so that a fee to finance it is a tax. Independent of our decision in *Church of Peace*, our supreme court has effectively contradicted both propositions. Specifically, in *Northern Illinois Home Builders Ass'n*, our supreme court considered and rejected similar challenges to a county transportation impact fee. It held that the fee, assessed upon owners of newly developed land, was not a real property tax merely because it was assessed upon real property and its owners. *Northern Illinois Home Builders Ass'n*, 165 Ill. 2d at 43. The supreme court also held that the fee was not a contribution to general government, though it paid for roads used by all, finding that an increase in traffic or road demand was attributable to new development and that "present residents of a county *** would experience a decline in service in the absence of improvements which maintain current traffic levels." *Id.* at 44 n.3. We consider the impact of impervious area on the Village stormwater system to be sufficiently similar: if a landowner paves or otherwise develops more of his or her land, the existing stormwater system experiences a decline in service absent improvements.

_____

[1] A municipality with a population over 25,000 is a home rule unit, and "[o]ther municipalities may elect by referendum to become home rule units. Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). Winnetka has passed such a referendum. See Winnetka Ordinance No. MC-2-2005 (approved June 21, 2005).

¶ 74    Against such a conclusion, Green argues that the Village has not justified the Fee by establishing such a relationship between impervious area and runoff into the Village stormwater system because the Village does not meter or measure stormwater runoff, does not vary the Fee according to the amount of rain or stormwater that actually falls, and did not conduct any testing of the relationship between impervious area and stormwater runoff. However, our constitution provides that the classes, exemptions, credits, and other allowances in fees and non-property taxes "shall be reasonable." Ill. Const. 1970, art. IX, § 2. We therefore find that the Village does not have to establish a perfect relationship between the subject and object of the Fee, only a reasonable one.

¶ 75    The Village's summary judgment motion was supported by the attached signed statement of Village Engineer Saunders opining in relevant part that the "amount of impervious area on a property is directly and proportionally related to an owner's use of the stormwater system *** because if impervious areas block water from being absorbed into the ground on a particular property, the storm water must either evaporate (which accounts for a negligible amount of stormwater during a storm) or run off the property into the Village's stormwater system." We find that this statement or opinion provides the requisite relationship between impervious area and runoff. We note that such a statement was not before us when we decided our earlier appeal on the pleadings. We were limited to considering the Ordinance itself—which mentions impervious area but not the specific relationship just stated—and the allegations in Green's complaint as amended. We are not so limited now, reviewing the disposition of cross-motions for summary judgment.

¶ 76    Green argues that this statement or opinion is based upon the consultant's study and that we cannot rely upon the study because the motions do not include a deposition or affidavit by the

consultant. However, Saunders's statement is attached to the Village's summary judgment motion in support thereof, and his statement incorporates the study by attachment and reference. The Village's motion and attachments make clear that Saunders formed the aforesaid opinion, and the Council adopted the Ordinance and imposed the Fee, at least in part based on the consultant's study, rather than Saunders or the Village performing his or its own testing of stormwater runoff. We do not find that the Village failed to establish a reasonable relationship to support the Ordinance and Fee because Saunders or another Village officer did not personally confirm that water soaks into earth and flows across pavement.

¶ 77                                    IV. CONCLUSION

¶ 78    Accordingly, we affirm the order granting summary judgment for the Village.

¶ 79    Affirmed.